THE LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY *v.* ELLINGTON, for use, etc.

| | |
|---|---|
| 94 | 785 |
| 110 | 138 |
| h111 | 627 |
| 94 | 785 |
| 118 | 671 |
| 94 | 785 |
| 119 | 674 |
| 94 | 785 |
| e121 | 230 |
| 94 | 785 |
| 122 | 694 |
| 94 | 785 |
| 127 | 494 |
| 127 | 497 |
| f127 | 499 |
| 127 | 500 |
| 94 | 785 |
| 130 | 176 |
| f130 | 181 |
| 130 | 187 |
| e130 | 188 |
| j130 | 189 |
| 130 | 191 |

1. It is no cause for dismissing, on motion, an action founded upon a policy of insurance which has been assigned in writing, that the assignor sues for the use of the assignee, both these parties being before the court as such by virtue of the petition thus brought, and the petition being amendable by striking out the assignor. A recovery may be had without amendment, the defect not being one which could prejudice the defendant on the merits of the litigation. The pleading, being bad in form, was open to special demurrer to enforce correction by amendment.

2. One of numerous conditions in the policy of insurance declared upon being, that the assured was to furnish the company with proofs of loss, and the plaintiff's petition alleging in general terms that he " has complied with all the conditions precedent to a recovery," the petition on being amended by setting out that the proofs furnished were not satisfactory and were returned as objectionable and insufficient, that the company's adjuster absolutely refused to pay the loss, saying that it would have to be adjusted in the courts, and alleging that this refusal constituted a waiver by the company to insist upon or require the plaintiff to furnish the preliminary proofs of loss required by the policy, and consequently he did not furnish them, is consistent with itself and contains no duplicity, inasmuch as the amendment qualified and virtually cancelled *pro tanto* the general allegation of compliance with all conditions.

3. The legal evidence of agency for the company by the person who was called and recognized as an adjuster, and who, as such, examined somewhat into the loss, being wholly uncontradicted and unanswered, was sufficient; and the absolute refusal of that person to pay, at the same time referring the assured to the courts for redress, was, *prima facie* and unexplained, a waiver on the part of the company of the preliminary proofs of loss. And although some illegal evidence was admitted and some error committed by the court in charging the jury, both as to agency and waiver, the

verdict, save as to damages and attorney's fees, was obviously correct, and for this reason no new trial is awarded.

4. One of the stipulations in the policy being that the assured should "keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit," it was not indispensable that the set of books kept should embrace what is usually termed a cash-book, or that the books should be kept on any particular system or in a manner to render it easy rather than slow and difficult to ascertain the amount of purchases and sales and distinguish cash transactions from those on credit. It was enough that these matters would be ascertainable from the books with the assistance of those who kept them or who understood the system on which they were kept. But the obscurity or complication of the books, and the probability of their not being understood by reason of not being kept on some clear and regular system, would furnish good cause for unwillingness on the part of the company to pay in full, when the statement from the books furnished to the adjuster appeared to him to show a much less loss than that claimed; and in such case bad faith in refusing to pay the whole should be treated as negatived by an offer to pay a sum approximating the whole but falling short thereof about twenty per cent.

5. There was no abuse of discretion in denying the motion for a continuance.

October 22, 1894.

Action on insurance policy.    Before Judge SWEAT. Ware superior court.    November term, 1893.

The opinion states the material facts, except that the ground of the motion for continuance was, as stated by counsel, that they were surprised by the amendment (referred to in the second head-note), and were thereby less prepared for trial, because they had prepared the case with express reference to the averment in the original petition that plaintiff had complied with all the conditions precedent to a recovery, but were unprepared to meet the averment in the amendment setting up an excuse for non-compliance with said conditions precedent, the practical effect of the amendment being to allow plaintiff to allege one state of facts in his declaration, and at the trial to prove another; that surprise was not claimed for delay, etc.

Atkinson, Dunwody & Atkinson and L. A. Wilson, for plaintiff in error.

W. G. Brantley and J. C. McDonald, *contra.*

Simmons, Justice.

1. It appears from the record that on November 1st, 1892, the Liverpool and London and Globe Insurance Company issued to Ellington a policy of insurance for the term of one year, upon a certain stock of goods and storehouse in the town of Saussy, Ga. On December 29th, 1892, the property insured was destroyed by fire. On December 30th, 1892, Ellington made a written assignment of the policy to the Savannah Grocery Company. Subsequently this action was brought by Ellington, for the use of the assignee. When the case came on for trial, the defendant moved to dismiss the same on the ground that it appeared from the allegations in the declaration that Ellington had no legal title nor any equitable interest in the policy, and hence no action could be maintained by him either for himself or for the use of the Savannah Grocery Company. This motion was overruled, and the defendant excepted.

It is undoubtedly true that sound principles of pleading require that an action shall be brought by the person having the legal interest therein, and this action should have been brought by the assignee without Ellington as a party. If the defendant had demurred specially upon the ground that Ellington was not entitled to institute the action, the court should have dismissed it, unless the declaration was amended by striking therefrom the name of Ellington as plaintiff. One of the objects of a special demurrer to a declaration is to require the plaintiff to amend the declaration in matters of form, and if he refuses to amend, the court may dismiss the action. But a motion to dismiss an action for improper joinder of parties is a different thing from a special demurrer, which, as above indicated, is predicated

on the theory that the declaration needs amendment in matter of form, while the motion to dismiss is upon the theory that the action cannot proceed at all, because there is no cause of action. While it would have been better pleading to have brought this action in the name of the assignee, yet as against a motion to dismiss, the court did not err in allowing the action to stand. The fact that the names of the assignor and the assignee were both in the declaration, one suing for the use of the other, did not make it void so that no recovery could be had thereon. It could have been amended at any time by striking the name of the assignor, and the rights of the defendant were not prejudiced by having both parties before the court. Any defence the defendant may have had could have been set up as well with the declaration in this form as it could have been if the assignee had sued alone; and a judgment in the case would bind both the assignor and the assignee. What substantial difference, then, could the bringing of the suit in this form make to the defendant, if none of its rights were prejudiced thereby? See *Gilmore* v. *Bangs*, 55 *Ga.* 403; *Chicago Cheese Co.* v. *Smith & Cothran, ante*, 663.

2. One of the conditions of the policy declared upon was, that if the property should be destroyed by fire, the insured should furnish the insurance company with proofs of loss within a specified time. The original declaration alleged that the plaintiff had "complied with all the conditions precedent to a recovery." On the trial of the case the plaintiff was allowed to amend his declaration by alleging, that the proofs furnished were not satisfactory and were returned as objectionable and insufficient; that the company's adjuster absolutely refused to pay the loss, saying that it would have to be adjusted in the courts; and that this refusal constituted a waiver by the company of its right to insist upon or

require the plaintiff to furnish the preliminary proofs of loss required by the policy, and consequently he did not furnish them. The defendant demurred to the amendment, and to the entire declaration, upon the ground that the declaration as amended was double, and that because of duplicity, the plaintiff should be put to his election thereon. The court overruled the demurrer and refused to compel the plaintiff to elect, and to these rulings the defendant excepted.

This amendment did not change the cause of action, as was insisted upon by counsel for the plaintiff in error. The cause of action was a breach of the contract; the amendment related to the manner of proof. In the original declaration the plaintiff alleged that he had complied with all the conditions of the policy; in the amendment he averred that he had not complied with certain of those conditions, because the defendant had waived compliance. This in our opinion meant that he abandoned that part of the original declaration which alleged compliance with the conditions referred to, and would not rely upon it, but would rely upon the waiver. Where a plaintiff, having averred in his original declaration a certain state of facts, subsequently amends it by alleging another state of facts inconsistent with the first, he abandons or cancels the first averment, and it is virtually stricken by the allowance of the amendment. The better practice would be to take an order striking the first allegation from the declaration, or else enlarge the amendment so as expressly to expunge that allegation or substitute the new matter for it.

3. There was evidence to the effect, that after the fire one O'Connor visited the place where it occurred, and that the agent who had issued the policy recognized him as an adjuster of the company, and as such he examined somewhat into the loss. This evidence was wholly uncontradicted and unanswered, although O'Connor and

this agent were present at the trial, and in our opinion was sufficient proof of O'Connor's agency for the company. The record further discloses that he negotiated with the insured in regard to the payment of the loss, instructed him how to make proofs of loss, and the proofs were sent to him and returned by him as insufficient, and finally he refused absolutely to pay the loss and referred the insured to the courts for redress. These facts, unexplained, constituted. *prima facie* a waiver on the part of the company of the preliminary proofs of loss. Although some illegal evidence was admitted and some error committed by the court in charging the jury, both as to agency and waiver, we are satisfied, after a careful examination of the evidence in the record, that the verdict was correct, save as to damages and attorney's fees; and as the case, under the evidence, could have no other legal result than a verdict for the plaintiff, we decline to award a new trial, but direct that the damages and attorney's fees be written off from the judgment.

4. At the conclusion of the plaintiff's evidence the defendant moved for a nonsuit. One of the grounds of this motion has already been dealt with as a ground of the motion to dismiss the action,—namely, that prior to the institution of the action Ellington had parted with his entire interest in the policy. Of course if this was not sufficient as a ground for the motion to dismiss the action, which is in the nature of a general demurrer, it is not sufficient as a ground for nonsuit. The second ground of the motion for nonsuit was, that the plaintiff had covenanted to "keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit," as stated in the policy, and in the event of a failure to produce the same, the policy to be void; and that he had failed to keep a set of books or to produce the same showing his

cash sales, and therefore the action could not be maintained. The record discloses that the plaintiff did keep a set of books, in which were entered his purchases and sales, both for cash and on credit, and that he kept a cash account, though he did not keep what is usually termed a cash-book, showing daily cash sales or a distinct record of merchandise sold for cash. The plaintiff and his bookkeeper testified, however, that they could ascertain and did ascertain from these books the amount of cash and credit sales. Under the clause referred to, it was not indispensable that the books kept should embrace what is usually termed a cash-book, or that the books should be kept on any particular system. It was sufficient if the books were kept in such manner that, with the assistance of those who kept them or understood the system on which they were kept, the amount of purchases and sales could be ascertained, and cash transactions distinguished from those on credit, although it might be slow and difficult to do this. The plaintiff and his bookkeeper having testified as above stated, and the books themselves being before the jury, the court did not err in refusing a nonsuit on this ground. The fact, however, that the books were complicated and difficult to be understood, by reason of their not being kept on some clear and regular system, afforded a good reason on the part of the company for being unwilling to pay in full, when the statement from the books furnished to the adjuster appeared to him to show a much less loss than that claimed by the plaintiff. The evidence shows that it took the person who kept the books a long time to show how much of the goods were sold for credit and how much for cash, and that to do this he had to resort to complicated calculations. Under this state of facts, we think it was not bad faith for the agent to refuse to pay the whole of the loss claimed. The fact that under these circumstances he offered to pay four

fifths of the amount claimed, should itself negative bad faith on the part of the company. The verdict was wrong, therefore, in so far as it awarded damages and attorney's fees against the defendant.

5. Under the facts, there was no abuse of discretion in denying the motion for a continuance.

*Judgment affirmed, with direction.*