# CHARLESTON

TUCKER *v.* THE COLONIAL FIRE INSURANCE COMPANY.

Submitted September 13, 1904.    Decided May 11, 1905.

1. ISURANCE POLICY—*Pleadings—Surplusage.*

The plaintiff in an action on a policy of fire insurance, being required to file a more particular statement of the nature of his claim, files a statement giving notice to the defendant insurance company that it would be held liable for the full face of the policy on the specific property insured thereby, and, in addition, that it would be held liable for the amount of "fixtures," not insured thereby, the part of such statement giving notice that the defendant would be held liable for the amount of "fixtures," is immaterial and should be treated as surplusage.   (p. 33).

2. INSURANCE POLICY—*Particular Statement—When Sufficient.*

Such statement is sufficient if it, in effect, gives notice to the defendant of the nature of the plaintiff's claim.   (p. 33.)

3. INSURANCE POLICY—*Particular Statement—Pleadings—Practice.*

Such statement is not a part of the plaintiff's declaration and cannot be demurred to.   If it is too vague or otherwise insufficient, the remedy is to object to the introduction of evidence under it. (p. 33.)

4. INSURANCE POLICY—*Particular Statement, Sufficiency of.*

Under the statement filed by the plaintiff in this case, it was proper to admit in evidence the policy sued on.   (p. 33).

5. INSURANCE POLICY—*Pleading—Practice.*

In an action upon a policy of fire insurance, the plaintiff is not required to prove compliance with any clause, condition or warranty contained therein, which the defendant does not, under section 64 of chapter 125 of the Code, by a statement filed, specify plaintiff's failure to perform, &c.   (p. 35).

6. INSURANCE POLICY—*Rule for Construction of.*

Clauses, conditions or warranties contained in policies of fire insurance, will be construed most strongly against the insurer where it may fairly be done, in order to avoid a forfeiture or to permit a recovery; in case of doubt fairly arising, the doubt will be resolved against the insurer; and where a clause, condition or warranty admits of two interpretations equally reasonable, the one most favorable to the insured will be adopted.   (pp. 35, 36).

7. INSURANCE POLICY—*Reasonable Compliance With, Necessary Only.*

In the absence of bad faith, the law requires of the insured only

a reasonable and substantial compliance with the clauses, conditions and warranties of a policy of fire insurance.   (p. 37.)

8.   INSURANCE POLICY—*Construction of "Inventory Clause."*

Where a policy of fire insurance provides that "the assured shall take an inventory of the stock hereby covered, at least once a year during the life of this policy," the assured has a year from the date of the policy in which to make an inventory, although the policy runs for one year only.   (p. 36.)

9.   INSURANCE POLICY—*Construction of Clause—Promissory Warranty.*

Where a clause in a policy of fire insurance provides that the assured "shall keep books of account, correctly detailing purchases and sales of said stock," and another clause in effect, provides that failure to observe such condition shall work a forfeiture of all claims under the policy, such clause requiring the assured to keep books of account, etc., is a promissory warranty on his part. (p. 40.)

10.   INSURANCE POLICY—*Clause Construed—Promissory Warranty.*

Where a clause in a policy of fire insurance provides that the insured, "as often as required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made," and another clause in effect, provides that no suit or action on the policy for the recovery of any claim, shall be sustained in any court of law or equity, until after full compliance by the insured with the foregoing requirement, such clause requiring the insured to produce for examination all books of account, etc., is a promissory warranty on his part and a condition precedent to his right of recovery on the policy. (p 40.)

11.   INSURANCE POLICY—*Clause and Conditions Construed.*

The clause requiring the insured to produce for examination all books of account, etc., as often as required, at such reasonable place as may be designated by the company or its representative, means a reasonable place in the locality where the insured property was situated, in the absence of conditions rendering such place unreasonable.   (p. 40).

12.   INSURANCE POLICY—*Demand of Insurer Unreasonable Under Policy.*

A demand by the insurer or its representative requiring the insured to produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if the original be lost, at a city located about 140 miles from the place where the insured goods were situated, is unreasonable as to place, and the

insured is under no duty to comply with such demand; and his failure to comply therewith constitutes no breach of the clause of the policy requiring him to produce for examination all books of account, etc., at such reasonable place as may be designated by the company or its representative.  (p. 41.)

13.  INSURANCE POLICY—*Proof of Loss Not Evidence of Amount of Loss.*

Proof of loss under a policy of fire insurance, is not evidence of the amount of loss, but is admissible in evidence for the sole purpose of showing that proof of loss has been made, as required by the policy.  (p. 42.)

14.  INSURANCE AGAINST FIRE—*Witness, Competency of—Evidence.*

One having sufficient knowledge of the value of property destroyed by fire to speak with intelligence on the subject, may testify as to his opinion of its value, and the weight to be given to his testimony, is a question for the jury.  (p. 43).

15.  JURY TRIAL—*New Trial—Immaterial Evidence.*

A verdict of a jury will not be set aside because of the admission of irrelevant and immaterial evidence, where the court can see that such evidence was not prejudicial to the party complaining.  (p. 43).

Error to Circuit Court, Wood County.

Action by J. W. Tucker against the Colonial Fire Insurance Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

V. B. ARCHER and WM. BEARD, for plaintiff in error.

MERRICK & SMITH and D. C. CASTO, for defendant in error.

COX, JUDGE:

This is a writ of error by the Colonial Fire Insurance Company to a judgment of the circuit court of Wood county. for one thousand dollars rendered against it in favor of J. W, Tucker, in an action of *assumpsit* upon a fire insurance policy.  The declaration is in statutory form.  The first of the many errors assigned, is the admission in evidence of the policy sued on, or rather a copy of the policy, the original being so charred by the fire that to have opened it would have resulted in its destruction.  The objection is not on the ground that a copy was introduced, but on the ground

that the copy when produced, varied from the statement of the nature of the plaintiff's claim, filed under section 62 of chapter 125 of the Code. The statement is as follows:

"The Colonial Fire Insurance, to J. W. Tucker    Dr.

To amount of the policy on stock of goods in the store at Burning Springs, Wirt County, West Virginia............... $1,000.00

To amount of goods and fixtures in the store at Burning Springs, Wirt County, West Virginia, covered by the policy at the time of loss, to-wit: On the 16th day of September, 1901........ ............................................. $6,900.00."

The policy sued on covered only the stock of merchandise and not the fixtures. The policy is a part of the declaration and discloses this fact. The statement filed includes more than the policy by charging also for the fixtures. This statement was filed without objection on the part of the defendant and the parties went to trial upon it. Statements under sections 62 and 64 of this chapter are not pleadings but are in the nature of bills of particulars. *Cappellar* v. *Queen Ins. Co.*, 21 W. Va. 576; *Rosenthal* v. *Scottish Union Ins. Co.*, 46 S. E. Rep., 1021. Such statements are sufficient if they in effect give to the party reasonable notice of the nature of his adversary's claim, or defense, as the case may be. The objection here is not that the statement is too vague, but that it includes too much. It is apparent that the defendant by this statement was notified that the plaintiff would claim to the extent of the face of the policy, the amount of the stock of merchandise covered by the policy, and, in addition, the amount of the fixtures not covered by the policy. The defendant being notified that it would be held for everything covered by the policy, it was entirely proper to admit the policy in evidence, and no variance resulted. The addition of the words "and fixtures," should be considered immaterial and treated as surplusage.

The defendant filed a plea denying liability, and also a statement under section 64 of chapter 125 of the Code, specifying that plaintiff had failed to perform certain clauses of the policy, whereby defendant claimed that plaintiff had forfeited all claims under the policy, and was barred from recovering. The statements and specifications of defense are as follows:

"The defense in the above cause, being with other things,

that the action cannot be maintained because of the failure to perform and comply with and for the violation of certain clauses, conditions and warranties, provisions and stipulations in the policy sued on. The defendant here specifies the particular clauses, conditions, warranties, specifications and stipulations, in respect to which such failure or violation is claimed to have occurred, which are as follows:

"First. 'It is expressly stipulated that the assured shall take an inventory of the stock hereby covered, at least once a year, during the life of this policy, and shall keep books of account correctly detailing purchases and sales of said stock, and shall keep said inventory and books securely locked in an iron safe, or away from building and at a safe distance during the hours that said store is closed for business. Failure to observe these conditions, shall work a forfeiture of all claims under this policy.' It is contended (a) that no inventory of stock covered by said policy was taken during the life of said policy; and (b) that no books of account, correctly detailing purchases and sales of said stock, were kept by the plaintiff, as required by such policy.

"Second. 'The insured as often as required, shall exhibit to any person designated by this company all the remains of any property herein described, and submit to examination, under oath, by any person named by this company, and subscribe the same, and as often as required shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if the original be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.' It is claimed by the defendant that on, to-wit, November 23rd, 1902, Chas. W. Blair, a person designated by the ·defendant company within the meaning of said provision, of said policy, by letter dated Huntington, West Virginia, November 23rd, 1902, required the plaintiff to comply with the foregoing provision of said policy, and to submit to the said Chas. W. Blair for examination, at the Florentine, Huntington, West Virginia, all books of account, bills, invoices and other vouchers, and certified copies of the same if originals be lost, in order to ascertain the exact amount of stock on hand at the time of

fire, which place so mentioned was a reasonable place and town, and it will be shown that said plaintiff, J. W. Tucker, failed to comply with said requirement, in this, that he failed to produce the bills, invoices and other vouchers, or certified copies of the same where originals were claimed to be lost, and failed to produce books of account which showed the exact amount of stock on hand at the time of said fire, so that the liability of this company under the provision of said policy could be ascertained.

"Third. 'No suit or action on this policy for the recovery of any claim shall be sustained in any court of law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months after the fire.' It will be claimed on the trial of said cause, that said plaintiff by this provision of the policy, is not entitled to maintain this suit thereon, for the reason that he has failed in the particulars mentioned in the first and second above specifications."

To this statement and these specifications of defense, the plaintiff filed a statement of matters relied upon by him in waiver or estoppel on the part of defendant. These statements and specifications limited the extent of the issue in this case. The plaintiff was not put upon proof of compliance with any clause, condition or warranty of the policy which the defendant had not specified plaintiff's failure to perform. *Rosenthal* v. *Scottish Union Ins. Co.*, *supra*. It will be observed that the whole of the "Iron Safe Clause," was quoted in the statement, but the only parts of it which defendant specified that plaintiff had failed to perform, were two: (a) That no inventory of stock covered by said policy was taken during the life of said policy; and (b) That no books of account correctly detailing purchases and sales of said stock, were kept by the plaintiff as required by such policy.

We desire first to notice the specifications as to the failure to take an inventory. This policy bears date on the 15th day of June, 1901. The fire occurred on the 16th day of September, 1901, three months and one day from the date of the policy. The inventory, by the terms of the policy, was required to be taken at least once a year. Shall we say that plaintiff did not have a whole year to take an inventory? Clauses,

conditions and warranties contained in a policy of fire insurance, will be construed most strongly against the insurer, where it may fairly be done, in order to avoid a forfeiture or to permit a recovery; in case of doubt fairly arising, the doubt will be resolved against the insurer; and where a clause, condition or warranty admits of two interpretations, equally reasonable, the one most favorable to the insured will be adopted. *Liverpool & London & Globe Ins. Co.* v. *Kearney*, 180 U. S. 132; *National Bank* v. *Ins. Co.*, 95 U. S. 673, 678-9, *Moulor* v. *Am. Life Ins. Co.*, 111 U. S. 335-41; 16 Am. & Eng. Enc. Law, 863 and the authorities cited in notes 2 and 3. In the case of *Liverpool, etc., Ins. Co.* v. *Kearney*, Justice Harlan, in delivering the opinion of the Court, says: "To the general rule there is an apparent exception in the case of contracts of insurance, namely, that where a policy of insurance is so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer. This exception rests upon the ground that the company's attorneys, officers or agents prepared the policy. and it is its language which must be interpreted." Not only do the words in question give to the plaintiff a year in which to take an inventory, but if there were a doubt fairly arising, it would be resolved in favor of the insured. Clauses similar to the one in controversy were passed on in the cases of *McCollum* v. *Niagara Ins Co.*, 61 Mo. App. 352: *Forehand* v. *Niagara Ins. Co.*, 58 Ill. App. 161; and *Citizens Ins. Co.* v. *Sprague*, 8 Ind. App. 275. These cases expressly hold that the insured is entitled to a full year from the date of the policy within which to take an inventory, notwithstanding the policy runs for one year only. It seems clear to us that the insured had a full year from the date of the policy within which to take an inventory, although the policy ran for one year only.

We will now notice the specification that no books of account correctly detailing purchases and sales of stock, were kept by plaintiff as required by the policy. Some weeks after the fire which consumed plaintiff's store at Burning Springs, C. W. Blair, the adjuster for the defendant, and the other companies which had issued policies on the same stock of merchandise, called upon plaintiff, and, after securing the execution of a non-waiver agreement, proceeded to investi-

gate the amount of the loss.   The plaintiff turned over all of his books of account and inventories and all duplicate bills he had then received, to Blair, the adjuster.   The books consisted of a journal, two ledgers and two inventories.   Certain bills of purchases had not been entered on the books at the time of the fire, and were burned.   It does not appear that there had been any unreasonable delay in entering these bills on the books.   Two pencil blotters also were burned.   The books, etc., turned over, were examined by Blair at Parkersburg and then taken by him to Huntington and there kept several days, until after the plaintiff went to Huntington, and after having a conference with Blair, brought the books, etc., back with him.   In the meantime, plaintiff had sent to Blair more duplicate bills.   No settlement having been made, plaintiff made proof of loss under the policy. After proof of loss was made, Blair, the adjuster, by letter, dated November, 23rd, 1901, to plaintiff, took exceptions to the proof of loss and demanded that plaintiff submit to him for examination at the Florentine Hotel, Huntington, W. Va., all books of accounts, bills, invoices and other vouchers, or certified copies of same if originals be lost.   Later the plaintiff went to Huntington with all his books and papers, including duplicate bills for nearly all of the purchases not entered on the books.   Some of them—in fact, nearly all of them—were not certified, but no objection was made by Blair because of that fact, and no further demands were made for certified bills.   A long consultation between plaintiff and Blair, the adjuster, took place on this occasion at Huntington, in the presence of Casto, attorney for plaintiff.   At this last meeting at Huntington a statement of the wholesale bills not entered, and which were destroyed by fire, was present, and a footing thereof was made by Blair.   No settlement was made.   About seven hundred pages of this massive record are taken up with the books and papers of the plaintiff.   There is practically no conflict in the evidence as to what books were kept by the plaintiff or as to what they disclosed.   The question is whether or not these books in legal effect, constituted a compliance with the clause of the policy requiring plaintiff to keep books of accounts, etc.

In the absence of bad faith, the law requires of the insured

only a reasonable and substantial compliance with the clauses, conditions and warranties of a policy of fire insurance. *Liverpool & London & Globe Ins. Co.* v. *Kearney*, 180 U. S. 132; *McNutt* v. *Va. Fire & Marine Ins. Co.*, 45 S. W. Rep. 61; *Am. Central Ins. Co.* v. *Ware*, 65 Ark. 336; *Meyer Bros.* v. *Ins. Co.*, 73 Mo. App. 166; *Standard Fire Ins. Co.* v. *Willock*, 29 S. W. Rep. 218; *Liverpool, etc., Ins. Co.* v. *Sheffy*, 71 Miss. 919; *Liverpool, etc., Ins. Co.* v. *Ellington*, 94 Ga., 785; *Western Assurance Co.* v. *McGlathery*, 115 Ala. 213; *Morris* v. *Imperial Ins. Co.*, 103 Ga. 567; *Jones* v. *Southern Ins. Co.*, 38 Fed. Rep. 19; *Sun Ins. Co.* v. *Jones*, 54 Ark. 376; *Brown* v. *Pallatine Ins. Co.*, 89 Tex. 590; *Pa. Fire Ins. Co.* v. *Brown*, 36 S. W. 590; *E. Tex. Fire Ins. Co.* v. *Harris*, 25 S. W. Rep. 720; *Home Ins. Co.* v. *Cohen*, 20 Grat. 312. We are aware that there are some authorities holding that a literal compliance is necessary. but the decided weight of authority is the other way.

In the case of *Liverpool, etc.* v. *Kearney*, *supra*, Justice Harlan says: "The covenant and agreement to keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit, together with the last inventory of said business, should not be interpreted to mean such books as would be kept by an expert book-keeper or accountant in a large business house in a great city. That provision is satisfied if the books kept were such as would fairly show to a man of ordinary intelligence, all purchases and sales both for cash and credit."

In the case of *McNutt* v. *Va. Fire & Marine Ins. Co.*, a part of the syllabus is as follows: "In a suit on such policy it appeared that complainant had, in good faith, kept books showing all his accounts, the main defect being that the cash account contained entries of monies received on collections and on deposit, as well as for sales of goods. Complainant had also taken an inventory, which it had been his habit to keep in his safe. On the day before the fire he had been engaged in taking a new inventory in the same book, which was not completed, and it had been inadvertently left out of the safe, and, together with his current invoices, destroyed. Complainant supplied all deficiencies in the proofs by producing duplicate invoices and showing beyond question the

true status of his accounts and of the stock destroyed.  *Held*, that complainant was entitled to recover on the ground that he had shown a substantial compliance with every reasonable requirement of such policy."

In the case of *Liverpool etc. Ins. Co.* v. *Ellington*, 94 Ga. 785, it was held, that where the policy required that the assured should keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit, "it was not indispensable that the set of books kept should embrace what is usually termed a cash book, or that the book should be kept on any particular system, or in a manner to render it easy rather than slow and difficult to ascertain the amount of purchases and sales, and distinguish cash transactions from those of credit. It was enough that these matters would be ascertainable from the books, with the assistance of those who kept them, or who understood the system on which they were kept."

In the case of *Western Assurance Co.* v. *Redding*, 68 Fed. Rep. 708, the first point of the syllabus is as follows: "Plaintiff, the keeper of a country store, held a policy of insurance on his stock of goods, issued by the defendant company, which contained a clause providing that it was one of the conditions of the policy that plaintiff should keep a set of books showing a complete record of his business, purchases and sales, take an itemized inventory at least once a year, keep such books and inventory in a fire-proof safe, and produce the same in case of loss; and that failure to comply with such conditions, should avoid the policy.  Plaintiff's store and stock were destroyed by fire, and, in an action subsequently brought against the insurance company, it appeared that he kept a set of books in a primitive and unskilful manner, which books were all in the safe and were produced, except a cash sales book covering twenty-one days before the fire, which had been inadvertently left out of the safe and burned, and such books showed plaintiff's purchases and credit sales and some of his cash sales; as well as the result of an inventory taken a short time before the fire.  *Held*, that the promissory warranty contained in the safe clause aforesaid, was a condition subsequent only, and that the facts shown were sufficient to justify a finding of compliance therewith."

In the case of *Home Ins. Co.* v. *Cohen*, 20 Grat. 312, it was held that "In an action on a policy of insurance against fire, all that can be required of the plaintiff is a reasonable and substantial compliance with the conditions of the policy." This case was approved by this Court in the case of *Bryan* v. *Insurance Co.*, 8 W. Va. 605. JUDGE MOORE delivered the opinion in the following language: "As held in *Home Ins. Co.* v. *Cohen*, 20 Grat. 312, a reasonable and substantial compliance with the terms of the policy is all that is required."

The clause of the policy under consideration, constituted a promissory warranty on the part of the plaintiff, and a reasonable and substantial compliance therewith, in good faith, is shown by the practically uncontradicted and uncontroverted evidence in this record. The authorities we have cited meet every objection to the books of account kept by the plaintiff. These books were produced on the trial and were copied in the record. A full statement was made of the wholesale bills not entered. The plaintiff testified that from these books and papers he could and did ascertain the purchases and sales. The adjuster, Blair, testified that "It is not difficult to take books of this kind and arrive at a conclusion, because they were simply single entry books— simply a debit and a credit." A statement of the wholesale bills not entered amounting to about $1,300.00, was produced, and duplicates of nearly all of said bills were also produced. Adjuster Blair testified that he made up a statement from these books and papers of the amount of goods on hand at the time of the fire. Plaintiff and Blair arrived at different conclusions, but Blair rejected items which the plaintiff included.

We will now consider the specification that plaintiff failed to produce at Huntington, West Virginia, pursuant to the letter of November 23rd, 1901, all books of accounts, bills, invoices and other vouchers, or certified copies of same if original be lost. Defendant had a right to demand the production, for examination, of all books of account, etc., but in so doing it must be prompt and reasonable in its demands. Kerr on Ins, 543, and cases cited in note 309. The provision of the policy requiring the insured to produce for examination all books of account, etc., was a promissory war-

ranty on his part and a condition precedent to his right to recover on the policy. In the case of *Murphy* v. *Northern British & Mercantile Co.*, 61 Mo. App. 323, a clause almost identical with the one under consideration, was construed and it was there held that "The provision of an insurance policy requiring the insured to produce his books, etc., for examination when required, at a reasonable place, means a reasonable place in the locality or town where the insured property is situated." To the same effect are the cases of *Am. etc. Ins Co.* v. *Simpson*, 3 Ill. App. 98; *Fleisch* v. *Ins. Co.*, 58 Mo. App. 598. See also Elliott on Insurance, section 313. This seems to be the only reasonable construction of this clause, in the absence of conditions rendering a place in the locality where the insured goods were situated, unreasonable, and we hold it to be the law.

In the case at bar, the demand was made to produce for examination all books of account, etc., at the city of Huntington, one hundred and forty miles or more from the place where the insured property was situated. The city of Huntington was not a reasonable place within the meaning of this clause of the policy sued on, and the plaintiff was under no duty to produce such books, etc., at that place, and can be charged with no violation of this clause because he did not do so,

It is obvious that there was no failure of the plaintiff to comply reasonably and substantially with the clauses specified by the defendant. In our judgment it would have been the duty of the court, upon motion, under the rule laid down in case of *Ketterman* v. *Dry Fork R. R. Co.*, 48 W. Va. 606. and other cases decided by this Court, to have directed a verdict for the plaintiff and an assessment of damages by the jury. If a verdict had been rendered for defendant, it would have been contrary to the law and evidence. This being true, the question of waiver and the evidence and instructions in relation thereto, were eliminated and were wholly immaterial. The single question remaining for the jury, and as to which there was a conflict in the evidence, was the *quantum* of damages to be assessed to the plaintiff; or, in other words, the amount of loss and damage.

The defendant complains of the refusal of the court to

give a number or instructions asked for by it; but there being no failure to comply with the provisions of the policy by the plaintiff, as specified by the defendant, most of these instructions were not applicable, and defendant was not prejudiced by the refusal to give any of them. Some of them were offered on the theory that it was the duty of plaintiff to show compliance with the clause requiring the books, etc., to be kept in an iron safe; but as we have already said, the defendant did not specify such failure and could not have the benefit thereof. Defendant also complains that improper instructions were given for the plaintiff. The instructions complained of were wholly immaterial and had no bearing on the question of the amount of loss and damage with which the defendant should have been asssesed. The rule is that the Court will not reverse a judgment merely because the trial court misinstructed the jury, when all the facts in the case are in the record, and it appears thereby that the appellant could not have been injured by the misinstruction. *Clay* v. *Robinson*, 7 W. Va. 348; *Corder* v. *Talbott*, 14 W. Va. 278; *Taylor* v. *Boughner*, 16 W. Va, 327; *Edgell* v. *Conaway*, 29 W. Va. 747; *Beatty* v. *B & O. R. R. Co.*, 6 W. Va. 388; *Carrico* v. *W. V. C. & P. Ry. Co.*, 39 W. Va. 86. The instructions complained of were not prejudicial to the defendant upon the question of the ascertainment of the amount of loss and damage.

Defendant also complains of the admission of certain evidence on the trial over its objection. The proof of loss made by the plaintiff under the policy, was admitted, but, as the record shows, only for the purpose of proving that it had been made, as required by the policy. A copy of the proof of loss is admissible to show compliance with the policy but not to prove loss. Mays on Ins. section 579, note 7. See also *Schwartsbach* v. *Protective Union*, 25 W. Va. 622. As we have seen, there was no issue involving this matter, but for the purpose for which the proof of loss was admitted, it was harmless and did not prejudice the defendant. Evidence tending to prove defendant's refusal to appraise, as provided by the policy was admitted. This evidence was likewise immaterial upon the question of loss and damage, and was not prejudicial. The statement of the wholesale bills not entered, was admitted, which was proper in

connection with plaintiff's evidence, whether the statement had ever been presented to adjuster Blair or not, The evidence of Casto, in rebuttal to Blair's testimony, as to amount ascertained by Blair to be the loss and damage, was proper. The evidence of Van Alstine, Owens, O'Brien and Depue, as to the value of the stock of merchandise consumed by the fire, was proper, Three of these witnesses had been clerks in plaintiff's store and the other a merchant. These witnesses show sufficient knowledge on the subject to enable them to testify intelligently upon the question of value, and the weight to be given to their testimony is for the jury.

Mr. Elliott in his work on Evidence, section 685, says: "Witnesses who are not strictly experts, as well as expert witnesses, may testify as to the value of property, real or personal, or as to the value of services, in a proper case. They must, however, have some knowledge on which to base their opinion. If they have such knowledge, the fact that it is slight will go to the weight of their testimony rather than to its competency." See also section 676. Bearing directly upon the competency of the testimony of these witnesses, see the following authorities: *Buckley* v. *U. S.*, 4 How. (U. S.) 251; *Enos* v. *St. Paul F. & M. Ins. Co.*, 46 Am. St. Rep. 796; *Sirrine* v. *Briggs*, 31 Mich. 443; *Walker* v. *Collins*, 50 Fed. Rep. 737. We do not find that defendant was prejudiced by the admission of improper testimony, although much testimony was admitted which was immaterial to the question of the amount of loss and damages. Mr. Barton in 2 Barton's Law Practice, 735, says in relation to setting aside a verdict of a jury on the ground of the admission of improper testimony, that "The court will not grant a new trial although there has been an error in the admission or rejection of evidence, or in the direction of the Judge, if it appear to the court on the whole matter that the verdict ought to be confirmed." See also 2 Tucker's Com., 302; 4 Minor Ins. 937; *Taylor* v. *R. R. Co.*, 33 W. Va. 39; *Hall* v. *Lyons*, 29 W. Va. 410; *State* v. *Hull*, 45 W. Va. 767; *Jones* v. *Singer Mfg. Co.*, 38 W. Va. 147; *Flowers* v. *Fletcher*, 40 W. Va. 103; *State* v. *Yates*, 21 W. Va. 761.

The evidence on the question of the amount of loss and

damage, while somewhat conflicting, was sufficient to support the verdict.

We find no reversible error in this record, therefore the judgment of the circuit court is affirmed.

*Affirmed.*