# CHARLESTON.

## STATE v. M. G. MARTIN.

Submitted November 21, 1922.     Decided December 5, 1922.

1.  CRIMINAL LAW—*Evidence of Telephonic Communication Hearsay, but Admissible to Show Defendant Acted on it.*

    The testimony of a witness detailing a telephone message by one son to another son of one accused of crime, overheard by a witness on a party line in the country, and upon which the defendant is alleged to have acted, and which he admits

he received on the morning of the day of the difficulty, though hearsay, is admissible for the purpose of showing the fact of such message and that the defendant acted thereon in going to the place of the difficulty. (p. 517).

2. HOMICIDE—*Admission of Statement of Defendant That he was Not Afraid to Shoot a Man, Held Error, but Harmless.*

Evidence of an idle remark alleged to have been made by one on trial for malicious shooting, some two years prior thereto, that he would not be afraid to shoot a man, that he could get out o fit by paying a certain sum of money, though limited by the trial court to the question of the accused's good character and credibility, is inadmissible for any purpose; but under the circumstances of this case and the fact that the accused was acquitted of malicious shooting and found guilty only of unlawful shooting, when the evidence would have justified a verdict of guilty of the graver offense, and there was little evidence justifying self defense, the error in admitting such evidence should be regarded as harmless and not reversible error. (p. 517).

3. CRIMINAL LAW—*Judgment not Reversed for Error in Admission of Evidence, when from Presentation of Whole Case Verdict Should be Confirmed.*

The general rule here is not to reverse for errors in the admission of evidence when it fully appears upon the whole case presented that the verdict ought to be confirmed. (p 517).

Error to Circuit Court, Roane County.

M. G. Martin was convicted of unlawfully shooting with intent to maim, disfigure, disable, and kill another, and he brings error.

*Affirmed.*

*Thos. P. Ryan* and *Hogg & Hogg,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

MILLER, JUDGE:

Upon an indictment charging him with feloniously, maliciously and unlawfully shooting with intent then and there to maim, disfigure, disable and kill one Fred Berry, defendant

was found not guilty of maliciously shooting, but guilty of unlawfully shooting the said Berry with the intent alleged; and the judgment of the court was that he be confined in the penitentiary for the period of one year and otherwise dealt with according to law.

The alleged errors assigned for reversal of the judgment are few, and these, we think, are without substantial merit. The first relates to the admission in evidence of certain conversations heard over the telephone by one or more witnesses, the first between two of the defendant's sons on the morning of the day of the shooting and before it took place, the married son at his home in Roane County saying to the other at defendant's home in Jackson County that Berry had that day begun work on the fence, referring to the fence on one of the lines between the farms of defendant and Berry, then in dispute, and requesting him to inform their father of the fact, and if he was going to do anything, it was time he was doing it, and that he had time to get over on the morning train. What the conversation was between defendant's wife and his daughter-in-law, does not appear from the record. The witness was not asked to repeat this conversation.

The objection to this evidence was that it was hearsay and not shown to have been between father and son, or communicated to him, and amounted to a communication between strangers in the absence of the defendant, and by which he was not bound. The avowed purpose of this testimony was to show that when defendant left home on the morning of the difficulty he had notice that Berry was at work on the line fence and that he acted on that information. The court admitted this evidence solely for that purpose, and on the assurance of plaintiff's counsel that they would connect defendant with this conversation, and if not so connected, the evidence would be excluded.

Afterwards the defendant, when on the witness stand in his own behalf, admitted that he had received this information before leaving home, from some source; that he had requested his son and daughter-in-law to let him know when Berry commenced work on the fence, and that he heard it the evening or the morning before he started; indeed he

seems to say that he knew before that Berry had been work-
ing on the fence, but not on the part of it that affected him.
He does say that when he left home that morning he had no
expectation of seeing Berry. The evidence shows, indeed
defendant admits, that he left home on the morning of the
tragedy with his shot gun and his dog, and arrived on his
farm in Roane County near his son's residence between nine
and ten o'clock, and that on the way he stopped at the shop
of W. D. McFarland, where he met George W. Custer, who
went with him and his son a few feet from the shop to look
after the building of a fence along the road. McFarland
testified for the State, that after Martin arrived, he referred
to Berry, and said he thought of going up there and putting
him off his place; that he was then talking to witness and de-
fendant's son James; and that the son told him he did not
want him to go there while Berry was at work on the place.
' It is undoubtedly the law that such telephone conversations
heard by a witness in the absence of the accused, unless com-
municated to him, would not be admissible in evidence, but
connected as they were with the admissions of the defendant,
their admission was harmless error, if error at all. The jury
might properly have found as a fact that the message was
communicated to defendant and prompted him to go to the
scene of the shooting on that 'day. But whether the par-
ticular message was received or not, defendant admits he had
received word that morning that Berry was at work on the
fence, and that he started to the farm in Roane County, and
that he did go to the place where Berry was and where the
difficulty took place.

Another point relating to the evidence is that the court
erroneously permitted the witness Tatterson to testify that a
year or more before the shooting he had heard defendant say
in substance that he would not be afraid to shoot a man; that
it wouldn't cost a man over a thousand or fifteen hundred
dollars to get out of it. At the time of this remark, the
witness said he and defendant had been talking about the
shooting of a man by one Shinn.

When this evidence was at first admitted, the court specific-
ally limited it to the question of the attitude of defendant

towards taking human life. Counsel objected to its admission for any purpose. At the conclusion of the trial, however, and before the case was submitted to the jury, on motion of the State, the court instructed the jury that they should not consider this evidence for any purpose except on the question of defendant's credibility and good character, which he himself put in issue. As so limited it is not likely that it influenced the verdict of the jury, although technically speaking we do not think it was admissible for any purpose. Of course, such a remark by the accused, if seriously made, would tend to reflect the real character of the defendant; but in the connection in which it was made, it was manifestly a mere idle remark, the like of which is frequently heard in the country, even among good citizens who presume to criticise the administration of criminal justice. The fact and circumstances of the shooting, the attitude of the defendant at that time and before, when his son and daughter-in-law tried to persuade him not to go to the scene of the difficulty, and his declaration to McFarland, not denied by defendant, that he "had thought of going up there and putting him off his place," might have justified a verdict of malicious shooting instead of one of unlawful shooting, for there was little in the evidence supporting the accused's theory of self-defense. The jury evidently did not attach any importance to that theory. The rule here is not to reverse because of the admission of evidence when it appears to the court upon the whole case as presented and the admissions of the defendant, that the verdict ought to be confirmed. *State* v. *Miller,* 85 W. Va. 326, 328; *Tucker* v. *Colonial Fire Insurance Company,* 58 W. Va. 30, 43.

Generally, character and reputation can not be proved by specific acts, but by evidence only of the general reputation of the accused in the community in which he lives, but for the reasons given we do not think the error in this case was prejudicial, else it might have been reflected in the verdict, so clearly right in this case.

In the petition for the writ of error complaints were made of some other rulings of the court on the instructions. These do not seem to have been regarded by counsel for defendant

in their brief and argument here, and are evidently not relied on. However, we have examined them and find no error in them.

Our conclusion is to affirm the judgment.

*Affirmed.*