19923. AMERICAN CASUALTY COMPANY v. COHEN.

594

Decided November 12, 1929.   Rehearing denied December 10, 1929.

*Smith, Hammond, Smith & Bloodworth, W. H. Smith,* for plaintiff in error.

*Carl B. Copeland,* contra.

Luke, J.   A. Cohen, doing business as the People's Credit Clothing Company, sued the American Casualty Company on a policy of burglary insurance in the sum of $500.   The case was tried before a judge and jury in the municipal court of Atlanta, and resulted in a verdict and judgment in favor of the plaintiff for $500.   The defendant then made a motion for a new trial, which was overruled. The defendant then carried the case to the appellate division of the municipal court, and the judgment of the trial judge overruling the motion for a new trial was affirmed.   The defendant then carried the case by certiorari to the superior court, and the judge of the superior court passed the following· order: "Upon hearing the within certiorari, the court is of the opinion that *the evidence warranted the verdict,* and that there was no error in overruling the motion for a new trial by the trial judge, nor in affirming his ruling by the appellate division.   Therefore, it is ordered and adjudged that the within certiorari be and the same is hereby overruled and dismissed, and the judgment complained of is affirmed."   (Italics ours.)   To this order and judgment overruling and dismissing the petition for certiorari the American Casualty Company excepted.

There are two points insisted upon by plaintiff in error:   (1) That the assured did not show that he kept books and acounts in such manner that the loss could be determined by the company; and (2) that the trial judge erred in charging the jury as hereinafter set out.   The first is argued under the general grounds, and the latter is the only special ground of the motion for a new trial.

It is undisputed that the plaintiff had paid his premiums and that the insurance was in force at the time of the burglary.   The plaintiff produced evidence that he put in the safe in his store on Sunday night $535 (but he was insured for only $500, hence the suit for a lesser amount), and that he then locked the safe, closed up his store, and went home, and that when he returned Monday

morning he found the bars on the back of his store had been "pushed back into the store from the outside," "the dial to the combination [of the safe] was broken off," and there was a "hole in the door, . . a hole in the safe about the size of a dollar," that the "safe was torn up," and that the money in the safe, $535, and several suits of clothes in the store were gone. As soon as the plaintiff found that his store had been burglarized he called the police department, the detective department, and the insurance agents, and several persons went to the store. The plaintiff swore that he kept books from which the loss could be ascertained, and that he showed them to the representatives of the defendant; and several leaves from his books and also his pass-book at the bank were introduced in evidence. Relative to his books the plaintiff testified in part as follows: "I kept a set of books down there at the store. Whenever a customer makes a payment at our store I write down what he pays. If a customer buys a bill of goods and makes a payment in cash, it is written down and the merchandise is charged. . . My cash-book shows every dollar that comes into the store. . . I called up the agents, Williams Brothers, and reported to them that my store had been robbed and that I had lost $535. They came down to the store and I showed them my books, including my bankbook, and also where the deposits were made and the last deposit. . . On my books I have the entries of the cash receipts and sales of merchandise. Every penny that comes into the store is shown on these books. . . I can tell exactly the amount of merchandise sold during the year and the amount of money that came in during the year. . . There is an entry of the amount of cash taken in. I showed Mr. Smith the amount of money taken in. . . I could tell from my books each night how much cash I was supposed to have on hand. . . *This book shows to the penny how much money I had in the store at the time of the robbery,"* etc. (Italics ours.) The jury in the trial court evidently believed from this, and other testimony, that the books kept by the assured constituted a sufficient compliance with the clause in the contract requiring him to keep books, and the credibility of witnesses, as well as the reconciliation of conflicting testimony where possible, are matters exclusively for the jury.

This court has repeatedly held that it will not interfere with the finding of a jury on a question of fact where there is any evidence

to support their finding. Whether the assured kept such books as were required by the contract of insurance was, under the record before us, a question of fact for the jury, and, in view of the evidence on the subject to support their finding, this court will not interfere with the verdict. In *Liverpool &c. Ins. Co.* v. *Ellington,* 94 *Ga.* 785, 791 (21 S. E. 1006), the Supreme Court said: "The record discloses that the plaintiff did keep a set of books, in which were entered his purchases and sales, both for cash and on credit, and that he kept a cash account, though he did not keep what is usually termed a cash-book, showing daily cash sales or a distinct record of merchandise sold for cash. The plaintiff and his bookkeeper testified, however, that they could ascertain and did ascertain from these books the amount of cash and credit sales. Under the clause referred to, it was not indispensable that the books kept should embrace what is usually termed a cash-book, *or that the books should be kept on any particular system.* It was sufficient if the books were kept in such manner that, with the assistance of those who kept them or understood the system on which they were kept, the amount of purchases and sales could be ascertained, and cash transactions distinguished from those on credit, although it might be slow and difficult to do this. The plaintiff and his bookkeeper having testified as above stated, and the books themselves being before the jury, the court did not err in refusing a non-suit on this ground." (Italics ours.) In *Ætna Ins. Co.* v. *Johnson,* 127 *Ga.* 491, 494 (56 S. E. 643, 9 L. R. A. (N. S.) 667, 9 Ann. Cas. 461), it was said: "There is no literal, hypercritical interpretation of the words of any contract. 'In all cases policies of insurance are liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which, in making the insurance, it was his object to secure.' . . It may be said that the 'iron-safe clause' as to keeping books is a promissory warranty, and must be complied with; but in determining what it requires and what will satisfy its demands, a fair and liberal rather than a narrow construction is to be placed upon it. In doing this, if the question is such as to authorize outside aid from evidence, the circumstances, the subject matter, the location and character of the business, the evidence of experts in bookkeeping, and such other evidence as may throw light upon it may be considered. It is also to be remembered that *forfeitures are not favored*

*in the law,* and where there is legitimately a choice of constructions, that which will save the contract is rather to be preferred than that which will work a forfeiture." (Italics ours.) In *Ætna Ins. Co.* v. *Lipsitz,* 130 *Ga.* 170 (2) (60 S. E. 531, 14 Ann. Cas. 1070), it was said: "It is a sufficient compliance with the usual 'iron-safe clause' of a fire policy, in respect to the keeping of books, if from the books kept by the insured, with the assistance of those who understand the system on which they are kept, the amount of purchases and the amount of sales can be ascertained, and cash transactions distinguished from those on credit." See also *Clay* v. *Phœnix Ins. Co.,* 97 *Ga.* 44 (25 S. E. 417); Civil Code, § 4268(4).

The court did not err in charging the jury as follows: "If you believe that there was a burglary at the time and place alleged; that external force and violence were used, within the meaning and terms of this policy, in effecting said burglary; that the plaintiff lost money which belonged to him and was his property; that the safe, at the time such external force and violence were used, was not left unlocked by the plaintiff, but was, at the time of the alleged burglary, locked as required by the policy; that the plaintiff kept a set of books from which the company, upon investigation, could arrive at the loss sustained by the plaintiff; if you believe that he has established his contentions by a preponderance of the evidence, then he would be entitled to recover in this case, and his recovery would either be in the total sum sued for, that is to say the sum of $500, or such other sum as you believe, under the evidence in the case, he is entitled to recover." The contention of the plaintiff in error, that the court should have charged that the jury must believe, in order to find for the plaintiff, that the safe was not opened by the use of any key or the manipulation of any lock, is without merit, as the court specifically charged that the jury, in order to find for the plaintiff, must believe "that there was a burglary" and that "external force and violence were used." The charge as a whole was entirely fair to the defendant company.

There is ample evidence in this case to show that the assured's store was broken into; that his "safe was torn up;" that "the little cash-drawer which sits in a wooden case (inside the iron safe) had been prized out," and that his money was gone. There is no allegation or proof of any fraud on the part of the plaintiff. The issue relative to the books kept by the assured was, under the record, a

jury question. The jury, the trial judge, the judges of the appellate division, and the judge of the superior court all said "that the evidence warranted the verdict" in favor of the plaintiff; and the judges also said that no error of law was shown; and so say we.

■ The judge of the superior court properly overruled the certiorari.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*