## FISHER v. CRESCENT INS. CO.

### *(Circuit Court, W. D. North Carolina. November Term, 1887.)*

1. INSURANCE—REPRESENTATIONS—WARRANTY.
An express warranty by one insured as to the circumstances of the insured property, binds him whether he be mistaken in fact or willfully misrepresents, while representations not amounting to a warranty will protect insurers only if willfully erroneous, or grossly negligent, in character.[1]

2. SAME—LOSS—PROOF.
Where a party shows the manner of keeping his account of stock and making his inventories, and he shows the amount of stock as appeared by these accounts, and testifies that he believes it to be correct, it is evidence on which the jury, if they believe him, may find the amount of such stock which has been destroyed by fire.

3. SAME—LOSS—NOTICE.
A stipulation in an insurance policy to give notice of loss, if any occurred, "forthwith," is satisfied by an immediate notice to a local agent, who transfers it in a short time to a general agent.

4. SAME—LOSS—WAIVER OF PROOF.
Questions as to the sufficiency of proof of loss by fire of insured property, were waived by the examination of the premises by the company's authorized agent, who investigated the loss, and refused to pay it.

5. SAME—LOSS—ESTIMATION OF.
Market value, and not local or peculiar value, of property destroyed by fire, and which can be procured in the market, must control in estimating the loss.

6. WITNESS—IMPEACHMENT—OBTAINING GOODS UNDER FALSE PRETENSES.
Proof of a conviction for obtaining goods under false pretenses tends to impeach the veracity of a witness.

At Law. Action by plaintiff, W. C. Fisher, on a policy of insurance.
*H. C. Jones* and *C. M. Jordan*, for plaintiff.
*Burwell & Walker* and *F. I. Osborne*, for defendant.

DICK, J., *(charging jury.)* The counsel, in their arguments to the court, have discussed certain questions of law that cannot be properly decided and applied in settling the rights of the parties, until the questions of

---

[1] See Insurance Co. v. Fisher, 30 Fed. Rep. 662.

fact presented in the issues submitted to you are determined by your verdict. The counsel have agreed as to the response that you are to make to three of the issues, and you must decide the other issues in accordance with the weight of the evidence. In order that you may have a more intelligible view of the legal bearing of these questions of fact, I will state some general principles of law that relate to this controversy.

When parties deal with each other on equal footing, the law presumes that they understand their rights and best interests, and can take care of themselves. A vendor may commend his goods in extravagant terms, and incur no legal responsibility thereby, if he uses no unfair means of concealment and deceit, and the purchaser has an opportunity to examine for himself. Where one party possesses superior means of knowledge, and knows that the other party relies upon him for correct information, his representations must be correct. Thus the manufacturer has a better knowledge of the articles he manufactures than a purchaser, who knows what he wants, but is not familiar with the quality and fitness of the article, but relies upon the judgment of the maker. In such case the law implies a warranty from the representations made by the vendor as to the quality and fitness of the article for the purposes designed.

In cases of contracts for insurance the parties are not, in all respects, on equal footing, as the applicant for insurance has a better knowledge of the subject-matter of the contract than the insurer, who must rely upon the statements of the applicant. The highest good faith is therefore required of such applicant; and he must make truthful representations, as far as he possesses actual knowledge, or has convenient means and opportunity of acquiring correct information, and he must conceal nothing that is material to the risk or to the liability to be incurred by the insurer. Insurers can secure for themselves full protection against untrue or erroneous statements by requiring from the insured express warranties upon all material matters involved in the transaction. By an express warranty the insured stipulates for the *absolute* truth of his statements. Good faith and honest purpose will not excuse error. The statements must be entirely true, or the warranty is not fulfilled. The law affords protection and remedy to insurers only when representations and concealments are willfully false, deceitful, fraudulent, or grossly negligent. When the applicant makes a statement according to his best knowledge and belief, and has availed himself of all means of information conveniently and reasonably within his power, such statement, although untrue or inaccurate, will not avoid the policy of insurance, if it is fairly made, and honestly believed to be true. There must be some element of fraud, willful falsehood, or gross negligence in representations before they will vitiate or avoid a policy of insurance.

The testimony of the plaintiff is the principal evidence as to the condition, quantity, and value of the whisky in the bonded warehouse at the time of its destruction by fire. The credibility of this testimony was impeached by the cross-examination. The plaintiff, in reply to questions, stated that he had been tried and convicted in a state court at

v.33F.no.8—35

Charlotte upon an indictment for obtaining goods under false pretenses, and was sentenced by the court to four years' imprisonment in the penitentiary at Raleigh; and that such sentence of imprisonment was remitted upon his making satisfaction for the goods obtained, and paying a fine.   You have the right to consider this matter in passing upon the credibility of his testimony, and also the fact that he has testified in his own behalf; but still you may believe him, if, upon considering his conduct on the witness stand under cross-examination, and the reasonableness and probability of his testimony, you regard him as worthy of belief.

The first controverted issue requires you to determine whether the plaintiff made a true representation as to his last inventory of stock of whisky in the bonded warehouse on the eighteenth of November, 1884. An inventory is a written list of goods and chattels.   It may or may not contain the estimated value of such property.   In the case of executors and administrators, the law requires such officers to make a full, true, and accurate description and estimate of all the personal property in possession or in action, to which they are entitled, and for which they are responsible in their official capacity.   It is the mode adopted by the law for charging them on their own oaths with goods and chattels which have, or with reasonable diligence should have, come into their hands for the benefit of the creditors and next of kin of the testator or intestate. If they charge themselves with goods and credits at a certain estimated value, the burden of proof is upon them in showing that such articles were not, by prudent management, of the estimated value in producing assets.   Prudent executors and administrators are, therefore, careful in making such estimates of value; and unless they are absolutely sure of the solvency of credits, they are returned as *doubtful*.   In all kinds of business, estimation of value is generally regarded as matter of opinion, and not as positive knowledge.   Inventories are often made by merchants for the purpose of ascertaining the condition of their mercantile business, and cost prices are generally stated.   When an inventory of stock has once been carefully and accurately taken, and only slight changes are subsequently made, which do not materially alter the condition of the goods, or produce confusion in the arrangement, and such changes are noted on the old inventory, the amended inventory may well be regarded as sufficient to afford correct information to persons interested as to the amount and estimated value of the stock in store.

When the plaintiff, as a distiller, manufactured whisky, he was required by law to keep the proper books, and make out sworn monthly statements in triplicate, showing the amount and condition of the whisky produced by him and placed in the bonded warehouse.   He has testified that such books were kept by him, and such triplicate statements were regularly made out and forwarded as directed by law; that after the suspension of his distillery, in September, 1884, he sent his books to the collector of the district residing in a distant town, and that he had no means conveniently within his power of ascertaining the amount of whisky in the bonded warehouse under the exclusive cus-

tody and control of the store-keeper, who was absent in a distant town, except the book of the store-keeper, who was required by law to keep in such book a detailed and accurate account of the condition and quantity of the whisky in the warehouse; and that he carefully examined such book, with the aid of the local agents of the defendant; that the last withdrawal of whisky was on the eighteenth of November, and was duly noted by the store-keeper with his usual mark for that purpose; and, at the time his application for insurance was signed, he supposed that the warehouse book contained a correct inventory of the amount of whisky in the warehouse; and he acted upon such information when he made the statements set forth in his application. Gentlemen of the jury, if you believe this testimony, you can properly find that the last inventory of the whisky was taken on the eighteenth of November, as stated by the plaintiff in his application for insurance.

The next issue involves the question of fact whether the plaintiff gave proper and sufficient notice of the destruction of the property by fire. The object of notice, when required by law or by the terms of a contract, is to enable a person to look after his interests, and to secure himself, as far as possible, against injury or loss. The sufficiency of notice—as to the manner and time of giving the same—is often dependent upon the circumstances connected with the matter. Where notice is required, and it relates to something in the future, or to something that may result in injury, if not arrested, averted, or avoided by prompt action, notice should be precise and definite, and be given as soon as possible. Notice of this character may enable the party notified to make proper preparation to meet the emergency. If an event has already occurred, and the situation cannot be changed, and a short delay will produce no material disadvantage, then such notice will be sufficient as will enable a party to make an easy investigation of the causes and attendant circumstances, and thus obtain accurate information as to the transaction. As a general rule, notice to an agent who has conducted or has been active as a party to a transaction, is sufficient constructive notice to his principal in reference to such matter.

In this case, the evidence, if believed, shows that the plaintiff, on the morning after the destruction of the whisky by fire, gave notice of the occurrence to the local agents of the defendant, and they, at his instance, at once communicated the fact to a general agent of the company at Charleston, South Carolina, who, in a short time afterwards, acknowledged the receipt of such letter, and promised to send an examiner to investigate and adjust the matter. The stipulation in the policy required the plaintiff to give written notice of his loss, *forthwith*, to the company. This kind of notice is sufficient, when given with due diligence, under the circumstances of the case. When there are disputes about the attendant facts and circumstances, the jury must determine the matter. When there is no controversy about the facts caused by a conflict of testimony, the court may decide the matter as a question of law. Upon this subject I instruct you that the notice was sufficient, and given in reasonable time, if you believe the uncontradicted testimony of the plaintiff.

On the next issue, involving the truth and sufficiency of the proof of loss, the evidence shows that the whisky was destroyed on the night of the twenty-fourth day of December, 1884, and the "proof of loss" was not sent to the company until the nineteenth of February, 1885. It is insisted that this proof of loss did not conform to the terms mentioned in the policy, as it was too long delayed, and was false in its statements as to the amount and value of the whisky destroyed. On this subject I instruct you not to consider this question, as the proof of loss was unnecessary for the purposes of this action, as it had been waived by the conduct of the investigating agent of the company. He had made a personal examination of the loss on the premises, and had written a letter to the plaintiff denying the liability of the company, and making a direct and positive refusal to pay, and setting forth the grounds and reasons for such refusal.

The last issue requires you to ascertain the value of the whisky destroyed. I instruct you to find from the evidence what was the market value at the time of the fire. The plaintiff has stated to you in his testimony what was the local value to him in his business as a retail dealer of whisky, but this must not control your verdict. The parties to the policy have fixed the method of ascertaining the value by the express term, "that the cost value of property destroyed or damaged shall in no case exceed what would be the cost to the assured, at the time of the fire, of replacing the same." Whisky is a commodity that has a market value in the wholesale trade, dependent usually upon the condition of supply and demand. From the evidence you must ascertain that value at the time of the loss. You must not be governed in your estimate by the evidence tending to show the high local value of whisky caused by the scarcity of corn in 1884 in that section of country. The plaintiff resided near a railway, and the markets of the country were convenient to him; and he had the opportunity of purchasing at market price whisky equal in quality to the article destroyed. When you return your verdict the court will be able to apply matters of law that arise, and render the proper judgment.

### PROCEEDINGS AFTER VERDICT.

The jury found all the issues submitted to them on the evidence in favor of the plaintiff, except the one as to the value of the whisky; and they assessed the value at $1.50 per gallon. By the agreement of counsel the jury found the quantity in the warehouse to be 852 gallons. The counsel then moved for judgment in favor of defendant; as, by an express provision in the policy, it was avoided, as the quantity and value of the whisky were much less than the amount stipulated for in the warranty made by the plaintiff in his application for insurance. On this question of law the court was of right opinion adverse to the defendant, and the motion was denied, but the counsel were informed that the matter would be again considered on a motion for a new trial.

The court being of opinion that the market value assessed by the jury was greater than was warranted by the evidence, the counsel of the plain-

tiff agreed that the value should be reduced to $1.25 per gallon, and judgment was entered of record.

Motion for new trial was entered and continued to the term of this court at Charlotte.