## AETNA INS. CO. v. PEOPLE'S BANK OF GREENVILLE.

(Circuit Court of Appeals, Fourth Circuit. May 22, 1894.)

### No. 63.

1. **FIRE INSURANCE—PROOFS OF LOSS—DESCRIPTION OF PROPERTY.**
   Under a policy requiring, if a fire should occur, a statement of the cash value of each item of the property and the amount of loss thereon, where the property insured is 100 bales of cotton, it is sufficient to state the number and weight of each bale and the value in the aggregate.

2. **SAME—MAGISTRATE'S CERTIFICATE.**
   A policy contained a condition that, if a fire should occur, the insured should, if required, furnish a certificate of a magistrate or notary to an examination of the circumstances. Such a certificate was attached to the proofs of loss, but the company objected thereto as defective, requiring additional particulars to show compliance with the policy. *Held*, that this amounted to a requirement of such certificate by the company.

3. **SAME.**
   A policy contained conditions that, if a fire should occur, the insured should furnish a certificate of a magistrate or notary not interested in the claim nor related to the insured, living nearest the place of fire, to an examination of the circumstances, and that no action should be sustainable on the policy until after full compliance with its requirements. The certificate furnished was made by one who was related by affinity to the insured, and who was not shown to be the magistrate or notary living nearest the place of fire. *Held*, that there could be no recovery on the policy.

In Error to the Circuit Court of the United States for the District of South Carolina.

This was an action by the People's Bank of Greenville, S. C., against the Aetna Insurance Company, on a policy of insurance, brought in a court of the state of South Carolina, and removed therefrom to the United States circuit court, which denied a motion to remand, the cause. 53 Fed. 161. At the trial the jury found a verdict for plaintiff. A motion by defendant for a new trial was denied, and judgment for plaintiff was entered on the verdict. Defendant brought error.

Geo. M. Trenholm, for plaintiff in error.

M. F. Ansel, of Cothran, Wells, Ansel & Cothran, for defendant in error.

Before Mr. Chief Justice FULLER, GOFF, Circuit Judge, and JACKSON, District Judge.

GOFF, Circuit Judge. On the 12th day of May, 1892, the People's Bank of Greenville, S. C., loaned one W. W. Benson the sum of $3,000, taking his note of that date for the same, payable 30 days after date, and receiving from Benson as security for its payment four receipts of the Travellers' Rest warehouse, for 100 bales of cotton, which were pledged for the payment of said sum of money. As additional security, a policy of insurance had been issued by the Aetna Insurance Company, of Hartford, Conn., on said cotton, insuring Benson to an amount not exceeding $3,000 thereon, and providing that the loss, if any, should be payable to said bank, as its interest might appear. The warehouse was destroyed by fire on the 12th day of June, 1892, while said policy was in force, and it is claimed that the 100 bales of cotton were lost by such fire. It was provided in the policy that, if a fire should occur, the insured should within 60 days thereafter, unless the time should be extended in writing by the company, render a statement, signed and sworn to by him, setting forth his knowledge and belief as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof,—and the amount of loss thereon; all incumbrances thereon,—together with other matters required by said policy, but not necessary to be mentioned in this connection, except the following conditions, which were part of said policy:

"And shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has examined the circumstances, and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify." "No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

A statement relative to the loss under the policy, by the fire on June 12th, was made by Benson, under date of June 27, 1892, the same being signed and sworn to by him, which was called the "proofs of loss," and was sent by registered letter from the post office at Travellers' Rest, S. C., June 29, 1892, adressed to Aetna Insurance Co., Hartford, Conn., and duly received by that company. Attached to and part of such statement was the following certificate:

"State of South Carolina, County of Greenville—ss.: I, J. E. Watson, a notary public, residing in Travellers' Rest, S. C., most contiguous to the property before described, hereby certify that I am not concerned in the loss or claim above set forth, either as a creditor or otherwise, or related to the insured or sufferers; that I have examined the circumstances attending the fire, or damage alleged; and that I am well acquainted with the character and circumstances of the insured, and do verily believe that he has by misfortune, without fraud or evil practice, sustained loss and damage on the property insured to the amount of thirty-two hundred dollars. In testimony whereof, I have hereunto set my hand and seal, this 28th day of June, A. D. 1892.

"J. E. Watson, Notary Public, S. C."

On the 23d day of July, 1892, Henry E. Rees, adjuster of said company, writes from Marietta, Ga., to Benson, acknowledging the receipt of the papers before mentioned, calling his attention to what was considered deficiencies in the same, and requesting further and more specific information as to the number of bales of cotton, the marks thereon, with the weights and grade of same. He also inclosed the form of an affidavit to be made in connection therewith, and closed his communication with these words:

"Furthermore, you will please state what is the exact relationship of J. E. Watson to you, and in what other way he may or may not have been connected or associated with you in business or other interests at the time of fire. Upon the receipt of this information, without which we can reach no conclusion as to your loss, we will give the claim further consideration. We hold the papers subject to your orders."

On the 5th day of August, 1892, Benson, by attorney, answers this letter, and sends what he calls "additional proofs" concerning his loss by fire at Travellers' Rest on the 12th of June, 1892, but does not give in detail the data called for by Rees, nor does he furnish the affidavit called for in the letter of July 23d, or answer the inquiries made relative to Watson. No further correspondence took place between the parties until after the suit was instituted by the bank, on the 15th day of September, 1892.

On the 8th day of August, 1893, the cause came on for trial, when a jury was impaneled, evidence offered, argument of counsel heard, and a verdict rendered for the plaintiff for the sum of $3,209.10. A motion for a new trial was made by the defendant, and overruled, whereupon judgment was entered for the plaintiff for the sum found by the jury, with costs, and this writ of error was prayed for and allowed.

During the trial, the policy of insurance was offered in evidence by the plaintiff, and admitted by the court. The party insured, Benson, was examined as a witness, and, among other things, stated that he had received from Rees the letter dated July 23, 1892; that he had gone to a party named Alexander for the purpose of obtaining the certificate required of the magistrate or notary public living nearest the place of the fire, and not interested in the claim or related to the insured, who had declined to give the same, because he had already made an affidavit or statement about the matter to the company or its adjusters; and he also testified that Watson, who did afterwards make the certificate, had married a cousin of his (the witness and the party insured). The plaintiff then offered the "proofs of loss" in evidence, and the defendant objected to their introduction, because the same had not been prepared in accordance with the requirements of the policy of insurance, and because the conditions contained in the same had been ignored in the preparation of said proofs; and for the further reason that it did not appear positively in them that the property insured was actually destroyed by fire, nor was the value of each item of property and the amount of loss thereon given; and also because the certificate attached thereto was not made by the magistrate or notary public not interested in the claim as a creditor or otherwise, nor related to the

assured, living nearest the place of fire. The court overruled the objections, and admitted the proofs, to which action the defendant objected, and exceptions were duly taken, which constitute the first assignment of error.

The proofs of loss, so far as the description of the property and the value of it is concerned, are, we think, substantially as provided for in the policy. The statement made by the assured was on a form furnished by the company for that purpose, one of its blanks in general use. It gave the number and weight of each of the 100 bales of cotton, and the value of the same in the aggregate. The number of pounds was set out in detail, each separate package being given, and the rate per pound was consequently apparent, showing the method by which the amount of loss was reached. The condition in the policy referring to the cash value of each item of property and the amount of loss thereon must be construed as requiring only a full and accurate statement of the property destroyed, with the value of the same, as the assured, without fraud and free from fault, is, under all the circumstances, able to furnish. The statement furnished by Benson contained all the information necessary to enable the company to understand the particular property destroyed, the quantity thereof, and the value of the same, as claimed by the party insured. The loss was all on one class of property, and there were no "items" to describe other than the different bales of cotton, which were set forth by number and weight. We think this was all that was intended by the contract, or that should be required of the party insured. It gave sufficient data on which to base an adjustment, and was all that was essential to a fair settlement of the questions relating to the property destroyed and its value.

The next objection to the admission of said proofs was that the certificate attached thereto was not made by the magistrate or notary public not interested in the claim, and not related to the assured, living nearest the place of fire. The defendant in error insists that this certificate, given by Watson, was an unnecessary or superfluous paper, filed by Benson, with his proofs of loss, for the reason that, by the terms of the policy, such certificate was to be given only "if required" by the insurance company, and that no such requirement had been made by it. Considering all the circumstances attending the presentation of the proofs of loss, can this claim be sustained? The party insured had 60 days after loss in which to file his statements, and the company the like time in which to demand the certificate. It may be conceded that it was not necessary for Benson to attach the certificate to the proofs in the first place, but he did do so, and thereby obviated the necessity of the requirement by the company. The fire was on June 12, 1892, and the proofs were sent in on the 29th of June, 1892. The company in its reply, dated July 23, 1892, alludes to the Watson certificate, and, in effect, gives the party insured notice that it is defective, requiring additional particulars that will show compliance with the conditions of the policy. Surely, we must hold this to be a requirement on the part of the company that the terms of the

policy relating thereto must be respected by the insured. Benson then still had ample time in which to do so, but he did not; and afterwards, on August 5, 1892, in replying to said communication from the company, he did send additional information as to the property destroyed and its value, but he absolutely ignored this demand relative to the Watson certificate.

The parties have made their own contract, have agreed on their own terms, and assented to certain conditions. The court cannot change them, and must not permit them to be violated or disregarded. They may be hard to comply with. The conditions may seem harsh or useless, but the contract has been duly made by parties capable in law to enter into it, and they have provided the terms and restrictions usual in such agreements, such as have been found from long business experience to be essential to the safe and proper disposition of such matters. The courts have uniformly enforced them. If they have not been waived, or one party been prevented from complying by the act of the other, they must be respected and enforced. From the earliest cases on fire insurance policies to the present, these conditions have been sustained. The following cases show their necessity, and the reasons given for requiring their enforcement: Oldman v. Bewicke, 2 H. Bl. 577, note; Routledge v. Burrell, 1 H. Bl. 254; Worsley v. Wood, 6 Term R. 710; Mason v. Harvey, 8 Exch. 819; Langel v. Insurance Co., 17 U. C. Q. B. 524; Leadbetter v. Insurance Co., 13 Me. 265; Inman v. Insurance Co., 12 Wend. 452; Roumage v. Insurance Co., 13 N. J. Law, 110; Insurance Co. v. Pherson, 5 Ind. 417; Johnson v. Insurance Co., 112 Mass. 49; Daniels v. Insurance Co., 50 Conn. 551. The supreme court of the United States has held to the same effect. Insurance Co. v. Lawrence, 2 Pet. 25, 10 Pet. 507. In the case just mentioned, it was decided that where a policy required the production of a certificate from a magistrate or notary of the town or county in which the fire occurred, relative to the facts connected with the same, the insured could not recover in the absence of such certificate, and that a certificate which had been furnished that did not comply with the requirements of the conditions of the policy would not be accepted.

In the policy now under consideration the conditions are the usual terms in such cases, and they are reasonable, and not hard to comply with, provided the party insured has honestly sustained a loss under the same. It is certainly lawful to so provide. It has been assented to by the parties, and has not been waived. The insurance company has the right to insist upon compliance with the terms of the contract, and, if the insured is permitted to violate or avoid them, it results in a new contract being made for the parties by the court. The party in whose name the insurance was carried endeavored to procure the certificate from another before he applied to Watson for it. This he admitted in his testimony. Presumably, this other party was qualified, by the terms of the policy, to give the certificate; but he refused, for some reason not fully explained, to do so. It was shown by Benson himself that Watson was related to him, by affinity, if not consanguinity, and therefore disqualified, under the policy, to make the certificate. The testimony of Ben-

son shows the falsity of at least a part of the certificate that he had caused to be filed. The policy requires the certificate to be given by the magistrate or notary "living nearest the place of fire," and it is not shown that was done, either by the certificate itself or by other testimony. We think that the failure of the insured to furnish a certificate, when he was, as we have shown, requested to do so, of the character required by the policy, was fatal to his right to recover thereon, and that the objection of the defendant below to the introduction of the "proofs of loss," as offered by the plaintiff below, should have been sustained. The plaintiff had not proved the case —had not shown the facts—upon which the defendant had promised to make indemnity. We do not find it necessary to further consider the errors assigned. The judgment of the court below will be reversed, and the case remanded, the verdict of the jury set aside, and a new trial ordered.