## LIVERPOOL & LONDON & GLOBE INS. CO., Limited, v. DILLON.

(Circuit Court of Appeals, Fourth Circuit. January 11, 1927.)

No. 2513.

1. Insurance ⊚⇒668(4)—Books and records of insured, kept pursuant to iron safe clause in policy, held sufficient to warrant submission of case to jury.

Books and records kept by insured in iron safe, while not complete, *held* sufficient compliance with iron safe clause of policy to warrant submission of case to jury.

2. Insurance ⊚⇒335(1)—Iron safe clause of policy need only be substantially complied with.

Substantial compliance with requirements of iron safe clause of policy is all that is necessary.

3. Insurance ⊚⇒668(4)—Evidence that register for credit accounts was supposedly fireproof held sufficient for jury on question of compliance with iron safe clause.

Evidence showing register wherein insured kept credit accounts was made of metal, with walls an inch thick, and supposed to be fireproof, *held* sufficient to go to jury on question of compliance with iron safe clause of policy, since failure of register to withstand fire is not conclusive against insured.

4. Insurance ⊚⇒542(2)—Proofs of loss, containing inventory and statement of purchases and sales, held sufficient.

Proofs of loss, containing inventory of goods on hand January 1st before fire and detailed statement of purchases and sales made thereafter, *held* sufficient.

5. Insurance ⊚⇒542(1)—Insured need only substantially comply with clause relating to proofs of loss.

Clause relating to proofs of loss is liberally construed in favor of insured, and substantial compliance therewith is all that is required.

6. Insurance ⊚⇒558(1)—Proofs of loss held furnished to insurer, where local agent, after receiving them without authority, forwarded to company, which retained and acted on them.

Proofs of loss, sent to local agent of insurer, *held* to have been furnished to company, within meaning of policy, even though agent was without authority to receive them, where, after receipt, he forwarded them to company, which retained and acted on them.

7. Insurance ⊚⇒560(1)—Insurer waives defects in proofs of loss by retaining and acting on them without protest.

Even if proofs of loss are defective, insurer, by retaining and acting on them without protest, waives defects therein.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; George W. McClintic, Judge.

Action by Robert L. Dillon against the Liverpool & London & Globe Insurance Company, Limited. Judgment for plaintiff, and defendant brings error. Affirmed.

D. M. Easley, of Bluefield, W. Va. (D. E. French and John W. Easley, both of Bluefield, W. Va., on the brief), for plaintiff in error.

G. C. Worrell, of Mullens, W. Va., and John Kee, of Bluefield, W. Va., for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge. This was an action at law to recover upon a policy of fire insurance on a stock of goods. The company filed specifications of defense under the practice in West Virginia, setting up that insured had not complied with the iron safe clause, and had not filed proofs of loss in accordance with the terms of the policy. At the conclusion of the evidence, the company moved for a directed verdict, which was denied by the trial judge, and the correctness of this ruling is the only point presented by the writ of error. The assignments of error do indeed present one other point relating to the admission in evidence of the proofs of loss, but this point is without merit, and is not supported by an exception in the record. The parties will be referred to in accordance with the positions occupied by them in the court below.

The facts, as developed by plaintiff's evidence, are that plaintiff was running a country store, which with his entire stock of goods, valued by him at $14,204.11, was destroyed by fire on May 7, 1925. In March, prior thereto, defendant had issued to plaintiff on the stock of goods the fire insurance policy in suit, in the sum of $5,000. The policy was in the standard form, and attached to it was the usual iron safe clause, which provided for the taking of inventories and the keeping of books, and for the keeping of such books and inventories "securely locked in a fireproof safe at night." An inventory was taken by plaintiff on January 1, 1925, and this, together with a record of daily cash receipts and of accounts with wholesale houses and banks, was kept in an iron safe. Plaintiff kept his credit accounts, which totaled between $500 and $1,000, in a Canton account register; each customer's account being on a separate pad. The books and inventories kept in the safe, together with the accounts in the register, gave a complete record of his business transactions. The register was a metal cabinet, with walls an inch thick or thicker. It was supposed to

be lined with asbestos, and was purchased by plaintiff as being fireproof. The fire which destroyed the stock of goods, however, burned also the record of credit accounts contained in this register. There was no evidence of any fraud on the part of plaintiff, and no contention by defendant that he was guilty of any fraud, either in connection with the fire or with the proofs of loss.

On June 10, 1925, plaintiff prepared and swore to proofs of loss showing the amount of the inventory of January 1st, the amount of purchases from January 1st to May 7th, the amount of cash sales, the amount of credit sales, and estimated profits and depreciation. To this was attached an itemized inventory of goods on hand January 1, 1925, a list of wholesale houses from which purchases had been made, with the amount purchased from each, an itemized list of the fixtures and furniture in the store, and a statement of the cost of construction of the store building. These proofs of loss were mailed by plaintiff to the Murphy-Matoaka Insurance Agency, a local agency which represented the defendant company. This agency forwarded the proofs of loss, either to the special agent of the company or to the adjustment bureau, which it had been advised would make the adjustment. At the request of the adjuster, plaintiff produced his books for inspection, and same were examined by the adjuster. No objection was made to the proofs of loss prior to the institution of suit, and they were produced on the trial by the defendant.

It is urged by defendant that the motion for a directed verdict should have been sustained upon the following grounds, viz.: That insured had not kept a proper set of books, in that collections from accounts were not kept separate from receipts from cash sales; that the Canton register, in which the credit accounts were kept, was not a fireproof safe; that the proofs of loss did not give the cash value of each item of the loss; and that the proofs of loss were sent to the local agent, and not to the company.

[1] We think that the motion was properly overruled and the case submitted to the jury. The books and records kept by plaintiff, while not as complete as those which would have been kept by an expert bookkeeper, contained a reasonably complete record of his business transactions, so that it was possible to ascertain therefrom the value of the stock of goods at any given time; and this is all that the policy required. The failure to keep collection items separate from receipts from cash sales was not a matter of any consequence to defendant; for, as to collections upon credit sales made after the taking of the inventory, these were in no respect different from receipts from cash sales, so far as they affected the showing as to the value of merchandise remaining, and, as to collections upon credit sales made prior to the inventory, the only effect of entering these as receipts from cash sales was to show the value of the stock as less than it actually was, a matter of which the defendant certainly could not complain. In construing a similar warranty in Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132, 136, 21 S. Ct. 326, 328 (45 L. Ed. 460), Mr. Justice Harlan, speaking for the court, said:

"The covenant and agreement 'to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business,' should not be interpreted to mean such books as would be kept by an expert bookkeeper or accountant in a large business house in a great city. That provision is satisfied if the books kept were such as would fairly show, to a man of ordinary intelligence, 'all purchases and sales, both for cash and credit.' "

[2] And the rule is well established that substantial compliance with the requirements of the clause is all that is necessary. Home Ins. Co. v. Williams (C. C. A. 5th) 237 F. 171; Tucker v. Colonial Fire Ins. Co., 58 W. Va. 30, 51 S. E. 86; Houseman v. Globe, etc., Ins. Co., 78 W. Va. 586, 89 S. E. 269; Pauley v. Sun Ins. Co., 69 W. Va. 187, 90 S. E. 552, L. R. A. 1918E, 473; Liverpool, etc., Ins. Co. v. Ellington, 94 Ga. 785, 21 S. E. 1006; note, 39 A. L. R. 1443, citing cases; 14 R. C. L. 1140, 1141; 26 C. J. 254.

[3] Nor do we think that the defendant was entitled to have a verdict directed in its favor on the ground that the credit accounts were kept in the Canton register. Defendant contends that the register was not a fireproof safe, within the meaning of the policy; but the evidence showed that it was made of metal, with walls an inch or more thick, that it was supposed to be lined with asbestos, and that it was purchased as being fireproof. We think that this was sufficient to carry the question to the jury. The fact that it did not withstand the fire is not conclusive against plaintiff. Quoting again from Mr. Justice Harlan's opinion in the Kearney Case, supra:

"If the safe was such as was commonly used, and such as, in the judgment of prudent men in the locality of the property insured, was sufficient, that was enough within the fair meaning of the words of the policy. It cannot be supposed that more was intended. If the company contemplated the use of a safe

perfect in all respects and capable of withstanding any fire however extensive and fierce, it should have used words expressing that thought."

In Fire Ass'n of Philadelphia v. Short, 100 Ill. App. 558, the court said:

"The condition in a policy that requires the insured to keep his books in a fireproof safe, must receive a reasonable construction. Such construction does not require that the safe shall be absolutely fireproof. It is a matter of common knowledge that safes of different styles and made by different factories are put on the market as fireproof safes. When a party in good faith buys a safe represented and sold in the market as a fireproof safe, believing it to be such, he has complied with the condition in his policy which requires him to keep a fireproof safe. To hold otherwise would be to hold that every one insured under such a condition becomes on his part an insurer and guarantor of the quality of his safe as to its being fireproof. Such is not the requirement of the policy when fairly construed."

See, also, Sneed v. British-American Assur. Co., 73 Miss. 279, 18 So. 928; 14 R. C. L. 1143; note, Ann. Cas. 1913B, 51.

[4, 5] The objections to the proofs of loss were altogether lacking in merit. As above stated, they gave an inventory of the goods on hand January 1st, with a detailed statement of the purchases and a statement of the sales made after that date. This, we think, was all that insured could reasonably be expected to furnish and all that the policy required. A statement showing each item of merchandise destroyed could not have been furnished unless a daily inventory had been kept, and the policy did not require this. The object of the clause relating to proofs of loss is to give the company proper information as to the facts rendering it liable. It is liberally construed in favor of the insured, and a substantial compliance therewith is all that is required. 14 R. C. L. p. 1337 et seq.; 26 C. J. 378, 379; Ætna Ins. Co. v. People's Bank of Greenville (C. C. A. 4th) 62 F. 222; Globe & Rutgers Ins. Co. v. Prairie Oil & Gas Co. (C. C. A. 2d) 248 F. 452.

[6, 7] Although the proofs were sent to the local agent of the company, and there was no proof of its authority to receive them, it is shown that the proofs were sent by the local agent, either to the special agent of the company, whose authority is not controverted, or to the adjustment bureau, which the local agent had been advised would adjust the loss; that the adjustment bureau investigated the loss on the proofs as made and required plaintiff to produce his books for inspection, which he did. The proofs must have come eventually into the hands of the company, for they were produced by it at the trial. Even if the local agent was without authority to receive them, there can be no doubt that they were furnished to the company within the meaning of the policy, if, after receiving them, he forwarded them to the company which retained and acted upon them. Beatty v. Lycoming County Mutual Ins. Co., 66 Penn. 9; 5 Am. Rep. 318; Fisher v. Crescent Ins. Co. (C. C.) 33 F. 544; 26 C. J. 370. And, even if the proofs were defective, the company waived the defects by retaining and acting upon them without protest. Columbia Ins. Co. v. Lawrence, 10 Pet. 506, 9 L. Ed. 512; Tayloe v. Merchants' Fire Ins. Co., 9 How. 390, 404, 13 L. Ed. 187; Scottish Union & National Ins. Co. v. McKone (C. C. A. 8th) 227 F. 813; Jones v. Mechanics' Fire Ins. Co., 36 N. J. Law, 29, 13 Am. Rep. 405; Rheims v. Standard Fire Ins. Co., 39 W. Va. 672, 20 S. E. 670; Morotock Ins. Co. v. Cheek, 93 Va. 8, 24 S. E. 464, 57 Am. St. Rep. 782; 14 R. C. L. p. 1351; 26 C. J. 398.

There was no error, and the judgment of the District Court is affirmed.

Affirmed.