MARYLAND CASUALTY CO. v. KERN COUNTY. *

GLEN FALLS INDEMNITY CO. v. KERN COUNTY et al.

Nos. 7924, 7974.

Circuit Court of Appeals, Ninth Circuit.

May 5, 1936.

*Rehearing denied June 8, 1936.

George M. Naus and Donald Seibert, both of San Francisco, Cal., for appellant Maryland Casualty Co.

Thornton & Watt and H. A. Thornton, all of San Francisco, Cal., for appellant Glen Falls Co.

Thomas Scott, Dist. Atty. for Kern Co., W. A. McGinn, Asst. Dist. Atty., Harvey & Johnston, and Alfred H. McAdoo, all of Bakersfield, Cal., for appellee Kern Co.

Frank P. Deering and James Walter Scott, both of San Francisco, Cal., for appellee Standard Acc. Ins. Co.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

In each of two acitons brought by the county of Kern, Cal., to recover upon insurance policies given to insure it from loss due to burglary or robbery, the county recovered judgment in No. 7924 against the Maryland Casualty Company for the sum of $12,759.86, and in No. 7974 against the Glens Falls Indemnity Company for $21,266.43, representing their respective pro rata amounts of the sum of $34,026.29. The two cases were consolidated for trial. Separate verdicts and judgments were rendered against the respective companies. From each of these judgments, the defendant insurance company appeals.

The complaints of the county of Kern alleged that the county treasurer of the county had been robbed of the sum of $34,026.29. The defendants denied the robbery. The verdict of the jury in favor of the county establishes the fact of robbery on disputed evidence and that implied finding is not and cannot be questioned on this appeal.

The appellant companies each moved for a directed verdict on the ground the proof was insufficient to justify a verdict in favor of plaintiff. They assigned the denial of that motion as error and in support of their assignment contend that cer-

776

tain provisions of the policies of insurance intended for the protection of the insurance companies constituting promissory warranties were broken by the county.

The policies were both issued to the county of Kern as the assured, and not to the county treasurer who was the custodian of the funds of the county. This fact is significant in the application of the warranty in question, which is as follows:

"The company shall not be liable * * * (2) unless the records of the assured have been so kept that the amount of the loss can be accurately determined therefrom by the company."

This agreement is found in all the policies involved.

■ The funds stolen were alleged and found to be cash, taken from a pouch or wallet kept by the county treasurer of the county in the safe of the county in his office. These funds were collected from the taxpayers within an assessment district in the county, known as the Buena Vista water storage district organized under the statutes of California. Cal.St.1921, p. 1727. The funds were public and county funds. Buena Vista Water Storage Dist. v. Shields, 126 Cal.App. 241, 14 P.(2d) 559, 15 P.(2d) 861. No books were kept by the county auditor which showed anything concerning these water district funds. The principal difficulty with reference to the books of the county result from the fact that the county treasurer, in violation of the law of California (People v. Dillon, 199 Cal. 1, 248 P. 230; 18 Cal.Jur. p. 871, § 169; Cal.Penal Code § 424, subds. 1 and 2; 4 Cal.Jur. pp. 236, 237, §§ 121, 122; 21 Cal.Jur. p. 902, § 82; People v. Wilson, 117 Cal. 242, 49 P. 135), had deposited large amounts of money with the United States Building & Loan Association. The amount of these deposits in the building and loan association aggregated $55,000, the withdrawals therefrom $45,000, leaving a credit on September 15, 1930, of $11,-562.30. This balance included an interest credit of $235.01 entered in the passbook January 1, 1930, and another interest credit of $1,237.29 entered therein on July 1, 1930. This passbook was issued in October, 1929, and is, "In account with Mr. J. P. Shields, Treas. c/o County Treas."

■ The appellants contend that "under no stretch of the imagination is it possible to consider this pass book as a record of or kept by the county of Kern." This, we think, must be conceded. This account, it will be observed, is a personal account of J. P. Shields, the addition of the word "Treas." did not make the account a trust account in favor of the water district, the county treasurer, or the county. See Commercial Sav. Bank & Trust Co. v. National Surety Co. (C.C.A.) 294 F. 261; see, also, San Diego County v. California Nat. Bank (C.C.) 52 F. 59. The evidence indicates that this passbook was kept by the county treasurer in the wallet with the funds of the water district, and there is nothing other than this to indicate that the funds of the district were deposited with the United States Building & Loan Association. The United States Building & Loan Association became insolvent and its affairs were placed in the hands of a receiver in bankruptcy. The passbook of J. P. Shields was surrendered to the receiver, and a receipt written on rough scratch paper with a lead pencil was given in its place, as follows:

"Received 3-2-1931, 6% Pass Book Investment Certificate No. 7292, * * * Proof of claim for $ Prin. 11,562.30, J. P. Shields, Treas., c/o Co. Treasurer Office, Bakersfield, Calif., W. H. Comstock, Receiver for United States Building and Loan Association by V. B. S."

On the back of this receipt is the following memorandum:

| "Prin. and Interest | | $11,562.30 |
| "Interest allowed by receiver | | 326.56 |
| | | 11,888.86 |
| "Principal | | Interest |
| | 10,000.00 | 1,888.86 |
| "Aug 1931 10% div. | 1,188.88 | |
| | 8,811.12 | |
| "Jun 32 10% div. | 1,188.88 | |
| | $ 7,622.24" | |

The cash book kept by the county treasurer in the usual manner and style of account books showed the cash received and disbursed by him on account of the distract. It did not show any of the amounts withdrawn by the county treasurer for deposit in the building and loan association. The robbery occurred June 25, 1932, at noon. The cash books of the county treasurer then showed cash to the credit of the water district in excess of the cash on hand by $7,622.24. In making this statement,

we ignore an entry which the appellants claim was made after the robbery of "savings $9,511.04" which was subsequently erased, evidently because it was a false entry made after the robbery. It must be conceded that the cash books of the county treasurer do not show the amount of the loss unless we treat the passbook then in the possession of the receiver, or rather, the receipt issued in exchange therefor with its indorsement, as records kept by the assured county within the meaning of the policy.

■ It may be that a liberal interpretation of the policy in favor of the policyholder would justify reference to these memoranda as records showing the amount of money in the possession of an insured, but it is clear that these books were not kept by the county of Kern. Although the policies in question are evidently in a form and on a blank usually utilized to protect private individuals or corporations, nevertheless in determining the relative duties of the parties under the policy, it must be considered that the county of Kern, the assured, can act only through its officers, and that such officers only act for the county when pursuing their duties under the law relating to such county, its powers, and duties.

■ We must, therefore, consider what duties were imposed upon the officers of the county by the statutes and laws of California, for manifestly if the county treasurer had no authority to deposit the funds of the county in the United States Building & Loan Association, and was expressly prohibited from so doing, his memoranda of such transactions are not and cannot be account books or records of the county. They are at best equivocal memoranda of the treasurer.

The law of California concerning the custody of public money and the method of accounting therefor is well settled. The Constitution of California (art. 11, § 16) requires all moneys, assessments, and taxes belonging to or collected for the use of any county, and coming into the possession of any officer thereof, to be immediately deposited with the treasurer of the county to the benefit of the funds to which they respectively belong. The treasurer is forbidden to receive money into the treasury or for deposit with him as treasurer unless accompanied by a certificate of the auditor who must charge the treasurer with the amount received by him. Cal.Pol.Code, §§ 4093, 4101a, 4102. Such funds must be withdrawn or paid out only on a warrant of the county auditor. Section 4292a Cal. Pol.Code. The county auditor must keep accounts current with the county treasurer. Cal.Pol.Code § 4094. He must examine the county treasurer's books on the first and tenth days of every month and see that the same have been correctly kept (Cal.Pol. Code § 4096), and must, with the chairman of the board of supervisors and district attorney of the county, count the money in the county treasury once a month and make a report showing the amount and kind of money therein, and the amount of bank receipts for deposits therein (Cal.Pol.Code § 4097). The county treasurer is required to keep an account of the receipt and expenditure of all such moneys in books provided for that purpose in which must be entered the amount, the time when, from whom, and on what account all moneys were received by him, the warrant number, the amount, time when, and on what account all disbursements were made by him. Section 4101 of the Political Code of California, provides as follows:

"§ 4101. *Duties of county treasurer.* * * * 4. So keep his books that the amount received and paid out on account of separate funds or specific appropriations are exhibited in separate and distinct accounts, and the whole receipts and expenditures shown in one general or cash account. * * *

"6. Disburse the county moneys and all other money placed in his custody by official authority only on county warrants issued by the county auditor, except on settlement with the state.

"7. Disburse the moneys in the treasury on such warrants only when they are based on orders of the board of supervisors, or upon order of the superior court, or as otherwise provided by law."

Without further citation, it is clear that the California law requires two accounts to be kept of all funds in the county treasury, one set by the county auditor, and the other by the county treasurer. Certainly a private receipt or passbook in the hands of the treasurer is in no sense a book kept by the county, but the difficulty does not end here for this deposit and these books were made and kept in direct violation of the law.

It is clear, then, that the cash book kept by the county treasurer in his official ca-

**778**

pacity and in accordance with the law did not show the amount of money in the treasury at the time of the robbery, and that the amount stolen cannot be accurately determined from the books of the county because, by reason of the unauthorized removal of funds from the county treasury, the amount on hand at the time of the robbery was less than the amount shown by the books. It remains to consider the effect of this unauthorized withdrawal of funds by the county treasurer upon the contract between the insurance companies and the county with relation to the keeping of books.

Under the Constitution and statutory law of California, all public moneys of a county must be kept in the possession of the county treasurer. He cannot deposit any public money in any bank save upon proper security given and when thereto duly authorized by the board of supervisors. Such moneys as are so authorized may be deposited at interest with banks which have furnished the necessary security and have been authorized as depositaries. 18 Cal.Jur. 871, § 169, supra; Const.Cal. art. 11, § 16½, amendment; 4 Cal.Jur. 236, §§ 121, 122. In such case the county treasurer's books will show such withdrawal and deposit and the receipt of the banks will take the place of the corresponding amount of money in the treasury. Any removal of funds for loan or deposit otherwise is prohibited by law, its deposit is a felony. Cal.Penal Code, § 424; People v. Dillon, 199 Cal. 1, 248 P. 230. No treasurer is or could be authorized to deposit funds in a building and loan association. It follows that the withdrawal and deposit of county funds shown by the treasurer's passbook and receipt was wholly unauthorized by law. See San Diego County v. California Nat. Bank, 52 F. 59, supra. A felonious removal of funds from the treasury should not and could not properly be shown on the books of the county of Kern. The books of the county, that is, the cash account of the county treasurer, did show the money that should be in the county treasury. The county is no more responsible for the surreptitious removal of its funds by the county treasurer than it is for removal by any thief, robber, or embezzler. The policy of insurance cannot reasonably be construed to require that accounts be kept by the county of unauthorized peculations or misappropriation of its funds. The error of the county is in relying upon these private memoranda of the treasurer as evidence that it had kept the books as required by the policies. The purpose of the policy was to insure the county against wrongdoing and not to defeat its claim because of it. One would hardly claim that if there were two robberies in a month the first would defeat a claim for the second because the first had not been duly entered in the books of the county before its discovery.

We conclude, then, that the county did keep books of account which showed the money that was, or should have been, in the county treasury, as contemplated by the policies in question. The production of the passbook and receipt of the county treasurer had the purpose and effect of showing that the robbers did not take all the money which was missing. The insurance companies are relieved by the judgment from reimbursing the county for moneys unlawfully removed by the treasurer. In this conclusion we have assumed, as the parties have done, that the insurance companies cannot complain of the failure of the county auditor to keep the books required by law to be kept by him, for the reason that the policies of insurance merely required that the record of the assured should show the amount of money that was or should have been on hand at the time of the robbery. This was shown by the books of the county treasurer.

The appellant Glens Falls Indemnity Company also contends that the evidence is insufficient to justify the verdict in favor of the county, because the county failed to comply with the provisions of the policy concerning notice and proof of loss. The policy provides that "affirmative proof of loss under oath on forms provided by the company must be furnished to the company at its home office in Glens Falls, New York, within sixty days from the date of the discovery of such loss." Formal proofs of loss were filed September 22, 1932, at the local office of the Glens Falls Indemnity Company in the city and county of San Francisco. These proofs were not forwarded to the home office. The county of Kern relies upon the waiver of this condition of the policy by the conduct of the company in connection with the loss. In that regard the complaint alleged that prior to July 1, 1932, the defendant made a complete investigation of the loss and denied and repudiated all liability in the premises and that on the 1st of July, 1932, the coun-

ty, acting through its district attorney, gave notice and made claim for loss arising under the policy in as particular a manner as was then possible, stating the date of the loss and the amount of money taken ($34,-026.29), and demanded payment therefor. That no defects or insufficiencies in this claim or demand were pointed out by the Glens Falls Indemnity Company; that no blanks were furnished by the company for proof of loss as required by the terms of the policy until August 26, 1932, and that proof of loss was made upon such forms as soon thereafter as possible; and that the company waived the provision as to proof. If the Glens Falls Indemnity Company denied liability before the expiration of sixty days after the loss, such denial of liability was a waiver of such formal proof. Royal Ins. Co. v. Martin, 192 U.S. 149, 162, 24 S.Ct. 247, 48 L.Ed. 385; 26 C.J. 406, § 522. The Glens Falls Indemnity Company claims that there was no denial of liability except by one Olson who was an independent insurance adjuster located in Bakersfield, Cal., who was employed by the company to investigate the robbery. Mr. Olson, at the time of his investigation, notified the assistant district attorney, the county treasurer, and the deputy county treasurer that he had completed the examination, and "from the fact that there was no record in the books of the auditor's office that there had been any money received into the county treasury for or on behalf of the Bakersfield Water Storage District there was no liability on the part of the company." On August 23, within the sixty-day period, the district attorney wrote the company at its San Francisco office for forms on which to prepare the necessary proof of loss and on August 24, 1932, these forms were furnished, the letter accompanying stating that the furnishing of these blanks "is not an admittance or denial of the claim arising out of the robbery of the county treasurer of Kern county on June 25, 1932." An adjuster employed to adjust the loss is by virtue of his employment authorized to waive notice and proof of loss and a denial of liability by him is such a waiver. 7 Cooley's Briefs on Ins. p. 5959; Twin City Fire Ins. Co. v. Stockmen's Nat. Bank (C.C.A.) 261 F. 470, 476. It is also claimed that in a consideration of the effect of the conduct of the adjuster in denying liability we must hold that a denial of liability to the district attorney is not such a denial as would waive the furnishing of proof of loss for the reason

that the district attorney was not authorized by formal resolution of the board of supervisors to act for and on behalf of the county. The district attorney of Kern county is by law charged with the administration of the civil affairs of the county under direction of the board of supervisors. Cal.Pol.Code, § 4153. It is his duty to prosecute all actions for the recovery of debts and forfeitures accruing to the state and county. Id. § 4153, subd. 3. He is a general advisor of county officers (Id. § 4153, subd. 6) and charged with enforcing the rights of the county (Id. §§ 4153, subd. 3, 4154, supra), subject, of course, to the authority of the supervisors to supervise his action in conducting litigation (Cal.Pol. Code, § 4041.22; 9 Cal.Jur. 958, § 9). If we assume that a denial of liability by Olson was in effect a denial by the company, the communication of this denial to the district attorney would be communication to the county. It is sufficient for the purposes of this case to say that in view of all this evidence concerning the action of the county officials, the adjuster, and the officials whose duty it was to furnish blank forms for proof of loss, the jury was justified in concluding that the company had waived the delay in the formal proof of loss.

■ In addition to the foregoing contentions, both appellants assign as error certain rulings of the trial court admitting testimony over their objections. Some of these objections were to the testimony of deputy county treasurer C. R. Holmes to the effect that he could tell from the county treasurer's books, supplemented by the passbook and receipt, what amount of money should have been in the treasury at the time of the robbery. These objections were predicated on the proposition that the books and accounts must speak for themselves and oral testimony was not admissible. In the view we have taken concerning the books of the county, the effect of this evidence was wholly favorable to the appellants and relieves them of the payment of $7,622.24, shown by the books of the county treasurer to be in the treasury.

■ Objection also was made to the above testimony as to statements made by the adjuster Olson tending to show that he had denied any liability for the money stolen. This testimony was admissible for the purpose of showing waiver.

■ The appellant Glens Falls Indemnity Company also relies upon a ruling with reference to the testimony of E. H. Claire,

a local agent of the company who testified concerning his conversation with Olson, the adjuster. When a question addressed to him was objected to by appellant, it was stated by appellee that the purpose of the question was to show that Olson was authorized to investigate the matter, appellee also stated, "I do not want the whole conversation." Evidence as to the conversation was then given and it appeared therefrom that the next day further conversation occurred between Mr. Olson and Mr. Claire. The witness was asked to "tell the court and jury what the conversation was." The objection interposed to this question was, "It is not within the issues of the case and it is incompetent, irrelevant and immaterial, and not in any way binding upon the defendant Glens Falls Indemnity Company." The objection was overruled and exception taken. Thereupon the witness stated that Olson told him he had been questioning the deputy county treasurer, Mr. Holmes, and said, "It looked like it was not county money that was lost, but that it belonged to the Water Storage District." Testimony to the same effect had already been introduced to show that a similar statement had been made to the county officers. There was clearly no prejudice resulting to appellants from this testimony.

It follows from what we have said that the judgment of the trial court must be affirmed if we have jurisdiction of the appeal. While the result would be the same, it is necessary to consider the jurisdictional question which was raised by the motion of the county of Kern to dismiss the appeal of the two indemnity companies on the ground that another surety company, Standard Accident Insurance Company, was not joined in the appeal as appellee.

 It is claimed by the county that the Standard Accident Company is a party directly affected by the judgment, and that this court would not have jurisdiction of the appeal without the Standard Accident Insurance Company's being brought into the appeal by the appellant as appellee. In effect, the claim is that a citation on appeal should have been issued to the Standard Accident Insurance Company as appellee, but such a citation is not essential to the jurisdiction. Thomas et al. v. Green County (C.C.A.6) 159 F. 339; Nome & Sinook Co. v. Ames Mercantile Co. (C.C. A.9) 187 F. 928; Mitchell v. Lay (C.C.A. 9) 48 F.(2d) 79; Jacobs v. George, 150 U.

S. 415, 14 S.Ct. 159, 37 L.Ed. 1127. The Standard Accident Company has appeared upon the cross-appeal of the county of Kern and has moved for dismissal thereof upon the ground that no bill of exceptions has been settled within time and that the record has not been filed here within time. In considering the motion of the Standard Accident Company for dismissal of the cross-appeal of the county, it will be necessary to restate some features of the record which have not yet been considered.

 The two separate and distinct actions, one against the Glens Falls Indemnity Company, and the other against the Maryland Casualty Company, each brought by the county of Kern upon the policy or policies of insurance issued by the respective companies, were consolidated for trial in the district court. After the consolidation of the actions, the county of Kern filed an amended and supplemental complaint in which the Standard Accident Insurance Company was joined as a defendant. Appellee alleges the Standard Accident Insurance Company had given a bond for the faithful performance by the county treasurer of the duties of his office. It claimed that the Standard Accident Insurance Company was liable on the bond if no robbery had occurred, as claimed by the defendant insurance companies, or, in the alternative, if the robbery had occurred and the county be held to have breached its obligation under the insurance policies by reason of his failure to keep the records required by such policy, that then it be held that the loss to the county occurred by reason of such failure to keep such records, and that the Standard Accident Insurance Company was liable upon his bond given to secure the faithful performance of his official duties.

The trial court having held that the books kept by the county treasurer and by the assured were sufficient to conform to the insurance policies also held that the Standard Accident Insurance Company was not liable on the official bond. The county took a cross-appeal from the judgment in favor of the Standard Accident Insurance Company so as to be in the position to assert liability upon that bond in the event the judgment of the lower court against the two indemnity companies was reversed.

We have jurisdiction of the appeals and cross appeals.

In view of our conclusion as to the liability of the two indemnity companies and

the nonliability of the Standard Accident Insurance Company, the motions to dismiss the appeals are denied.

Judgment affirmed.

HANEY, Circuit Judge (concurring).

I concur in the result, but do not agree with the reasoning of the majority with respect to the records of Kern county.

The two policies issued by Maryland Casualty Company, hereinafter called the Maryland Company, and the policy issued by the Glens Falls Indemnity Company, hereinafter called the Glens Company, each contained exactly the following provision:

"The company shall not be liable * * * (2) unless the records of the assured have been so kept that the amount of the loss can be accurately determined therefrom by the company."

This provision must be construed in the light of its purpose.

In Cooley's Briefs on Ins. 2827, it is said that, " * * * The purpose of the provision is, of course, to facilitate the ascertainment of the actual loss and protect the insurer against excessive and fraudulent claims." See, also, Id. 2796.

Another rule of construction must be kept in mind. In National Union Fire Ins. Co. v. California Cotton Credit Corporation, 76 F.(2d) 279, 283, this court said:

"Provisions requiring the keeping of records and their production upon request for inspection by the insurer are promissory warranties. Substantial compliance with a promissory warranty is sufficient. [Citations.]"

See, also, Liverpool & London & Globe Ins. Co. v. Dillon (C.C.A.4) 16 F.(2d) 774; Home Ins. Co. of New York v. Williams (C.C.A.5) 237 F. 171; Wright v. Union Ins. Co. (C.C.A.5) 13 F.(2d) 612; New York Underwriters Fire Ins. Co. v. Malham & Co. (C.C.A.8) 25 F.(2d) 415; Ætna Casualty & Surety Co. v. Reliable Auto Tire Co. (C.C.A.8) 58 F.(2d) 100; Bank of Union v. Fidelity & Casualty Co. of New York (C.C.A.8) 62 F.(2d) 1040; Annotation, 39 A.L.R. 1443 et seq.

Still other rules of construction are shown by the following quotation from National Union Fire Ins. Co. v. California Cotton Credit Corporation, supra, 76 F. (2d) 279, 282:

"Where there is uncertainty or ambiguity in a provision of a policy of insurance, the court will favor the construction which will avoid a forfeiture, if it can reasonably do so. Fidelity & Casualty Co. of New York v. Phelps (C.C.A.) 64 F.(2d) 233, citing McMaster v. New York Life Ins. Co., 183 U.S. 25, 22 S.Ct. 10, 46 L. Ed. 64. If the policy is uncertain, it must be construed in favor of the insured and against the insurer. Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 462, 14 S.Ct. 379, 38 L.Ed. 231; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102."

In Home Ins. Co. of New York v. Williams, supra, 237 F. 171, at page 176, it was said:

"There is no dispute as to the books produced and their character. If they do not enable the defendant to reasonably arrive at the amount of the loss, then it was error for the court to leave to the jury to say whether such books were sufficient. The facts being undisputed, it becomes a matter of law for the court."

Whether or not the above quotation correctly states the law, it is unnecessary to consider, for even assuming its correctness, I am satisfied that the question was properly presented to the jury in this case. However, it should be noted that the question was left to the jury in Liverpool & London & Globe Ins. Co. v. Dillon, supra, Ætna Casualty & Surety Co. v. Reliable Auto Tire Co., supra, and Bank of Union v. Fidelity & Casualty Co. of New York, supra. In those cases, there was nothing said which might indicate that any different rule is to be applied to the fact of compliance with such "iron-safe" clauses than is applied to any other fact.

1. The policy provision quoted above refers to "records," but makes no attempt to define that word or specify any particular kind of records. The question arises as to whether the receipt, above mentioned, can be considered as a part of the "records."

In Webster's Dictionary (2d Ed.) I find the following definition of the noun "record":

"2. That which is written or transcribed to perpetuate a knowledge of acts or events; also, that on which such record is made. * * * "

Thus the word means either (1) the inscription itself, or (2) the thing on which the inscription is made. What was meant by the use of the word in the policies? When the purpose of the provision is con-

sidered, it is apparent that it was the inscription which was intended, that is, the figures and ordinary bookkeeping entries, for it is the entries which facilitate the ascertainment of the actual loss and protect the insurers against excessive and fraudulent claims. The mere fact that the entries were made on a loose sheet of paper rather than in a book does not change the fact that they are inscriptions. The entries might just as well have been made on parchment, on rubber, on wood, or on stone, but the company would not have been interested in that fact if the entries were accurate.

Further, the most that can be said is that the word "records" is ambiguous, and, under the rules stated above, we would necessarily have to give the meaning to that word which is most favorable to the insured.

2. The majority seem to place its decision on two grounds. The first is shown by the following quotation from their opinion, after quoting certain statutes of California:

"Without further citation, it is clear that the California law requires two accounts to be kept of all funds in the county treasury. * * * Certainly a private receipt or passbook in the hands of the Treasurer is in no sense a book kept by the county."

It is true that the statutes require certain books to be kept, but the majority has pointed out no statute which prohibits the keeping of other books or records than those specified, nor any statute or judicial decision which says that any books or records kept which are not required to be kept by law shall not be considered as records of the county. No doubt much data is kept, entered, and preserved by the various county officers which is not required to be so kept by law, but if they are true and relate to the business of the county, whether they are or are not required to be kept by statutes, such data is none the less "records" of the county within the language of the policies in question.

The holding of the majority is equivalent to reading into the policy provision as shown by the italics following:

"The company shall not be liable * * * (2) unless the records of the assured have been so kept that the amount of the loss can be accurately determined therefrom by the company, *and unless such determination may be made from such rec-*ords *as are required by law to be kept, without consideration to any other memoranda or records relating thereto.*"

Such a construction is not only unjustified, but is unnecessary.

3. The other ground on which the majority rests its decision is that since the deposits were made in violation of law, the "* * * memoranda of such transactions are not and cannot be account books or records of the county. They are at best equivocal memoranda of the Treasurer."

The quotation under 2 above also speaks of "private receipt * * * in the hands of the Treasurer."

The assumption is thus made that the receipt in the hands of the treasurer is in fact a "private" memorandum. No authority is cited and my examination discloses none which supports that assumption. The funds deposited were, as pointed out in the majority opinion, county funds. The receipt was a record of a transaction relating to those funds, and the fact that the transaction may or may not have been lawful, does not change that relationship.

The fact that the record on the receipt was kept by the deputy is unimportant, because some one of necessity must keep records. The county itself cannot, but it can be done only by some one acting for the county.

But assuming that the receipt was such a "private" memoranda, does that prevent its use? The policy provision says "records of the assured," only and does not exclude expressly records, for instance made by private accountants, or any particular form of records, but the sole requirement is that the records "of the assured" shall be so kept that the company may accurately determine the loss therefrom.

The dictionary defines the word "of" as follows:

"In the most general sense; proceeding from; belonging to; relating to; connected with; concerning. * * *"

The majority seem to adopt the meaning given, that the records must "belong to the county." Such a construction is construing the provision in favor of the companies and not in favor of the assured, contrary to the rules of construction outlined above.

When the provision is read in the light of its purpose, which is to facilitate the ascertainment of the actual loss and to prevent fraud, it is apparent that the receipt

must be used to accomplish those purposes. The record on the receipt is the only record which shows the accurate amount which must be deducted from the balance as shown by the cash book, in order to accurately determine the loss. Thus if we prevent the use of the receipt, we at the same time prevent the use of a record which facilitates the ascertainment of the loss. The other purpose, which is the prevention of fraud, is not defeated, because the accuracy of the figures on the receipt is not questioned.

I have no doubt that if the companies admitted the loss, and only the amount were in question, they would gladly and gratefully accept the receipt as a "record of the assured" in order to determine accurately the exact loss, rather than disregard the receipt, accept only the cash book as a "record of the assured," and pay some $8,000 additional—an amount for which they would not in fact be liable.

On this reasoning I am impelled to the conclusion that what the policies required was "records" from which the companies could accurately determine the loss. If the figures in such records are accurate, that fulfills their requirement, whether the records were made by or on behalf of the assured, or by a private person. The analogy of the following quotation from National Union Fire Ins. Co. v. California Cotton Credit Corporation, supra, 76 F. (2d) 279, 282, decided by this court, is apparent:

"The above-quoted provision of the application does not specify that the grading or classing shall be done by the insured. If the insurance company desired a grading or classing of the cotton by the insured, it should have so provided in the application."